[NEW YORK GENERAL TERM, May 2, 1865. *Ingraham, Clerke* and *Geo. G. Barnard,* Justices.]

---

In the matter of the petition of GEORGE C. TURFLER, to vacate an assessment for paving the Eighth avenue in the city of New York.

An assessment under a city ordinance, not made in conformity with the directions of the ordinance, is illegal and void; and a subsequent confirmation of it by the common council will not cure the illegality.

Where an ordinance directs work to be done and the expense assessed in a particular manner, if the assessors make an assessment in violation of the ordinance, it will be illegal and void.

An assessment is void which charges the owners of lots benefited with a greater proportion of the expense than that directed by the ordinance.

Where an ordinance directs the assessors to assess an equal amount of the expense upon the city treasury and upon the owners of the lots benefited, the direction can only be satisfied by charging one half the amount to the treasury, and assessing the other half upon the owners, including the owners of the public parks.

For the purposes of such an assessment, the corporation of the city of New York is owner of the public squares, and is to be assessed in the same manner as individual owners are assessed for their property.

The common council of the city of New York has the power to assume the expense of paving any of the streets of the city, and to pay the same, in whole or in part, out of the city treasury, and to assess the balance, if any, upon the owners of property.

The 175th section of the act of 1813 does not prevent such a course, on their part. While that act gives the common council the power to assess the whole expense on the owners of lots, yet if, for any reason, they think the public should bear a portion of the expense, they have authority so to direct. The section referred to is not obligatory.

It is the duty of assessors to make the assessment as provided for in the ordinance. They are not to decide whether the provisions of the ordinance are in all things in conformity to law, and if not, to amend it.

APPEAL from an order made at a special term declaring an assessment made by the corporation of New York void. In October, 1856, the corporation passed a resolution for having Eighth avenue, from Hudson to Forty Second street, with Belgian pavement. At the same time an ordinance was adopted directing the work to be done; that the Eighth Avenue Rail Road Company pay one third of the expense thereof, the property owners one third of the expense and the city treasury the remainder. The same ordinance directed the assessors to make a just and equitable assessment of the expense of conforming to the provisions of the ordinance among the owners, &c. of the lots intended to be benefited thereby. Proposals were received and the work awarded in July, 1859, to Thomas K. Downing. In September, 1859, the common council adopted an ordinance granting to the rail road company authority to pave all the space within the outside rails of their tracks with cobble stones, &c. On the 30th December, 1859, the common council confirmed the contract to Downing, with a modification excluding that portion within the outside rails of the Eighth Avenue Rail Road Company. The contract was completed by Downing, and the assessors made the assessment by charging the city with $54,846.89, the owners of lots with $54,846.89, and also charging the city with $12,130.81 for the public squares.

The petitioners objected to this assessment, that it was void on account of the irregularity of assessing an amount upon the owners of lots different from that directed by the

ordinance.    The justice at special term declared the assessment void, and the common council appealed.

*Wm. C. Trull,* for the appellants.

*C. C. Langdell,* for the respondents.

INGRAHAM, P. J.    It is very clear that, in no view of the case, this assessment can be said to have been made in compliance with the ordinance.    The cost of the work done was $121,824.59.    If the literal reading of the ordinance had been followed, the amount to be assessed on the owners was one third, or $40,608.20, while the amount actually assessed was $54,846.89.

If the work set apart to the rail road company, to be done by them, could be considered as one third part of the work, which is not alleged, and of which there is no proof, but which seems to be the rule which governed the assessors, still a greater error has been committed in making an assessment on the city for the public parks, and then dividing the balance between the city and the owners.    The direction was to assess an equal amount on the treasury and on the owners. This would only be satisfied by charging half the amount to the treasury and assessing the other half upon the owners, including the owners of the public parks.    For the purposes of such an assessment the corporation of the city of New York are owners of the public squares just as much as an individual owns a lot, and are to be assessed in the same manner.    Under such a distribution, the amount to be charged to the treasury of the city would have been $60,917.29, and to the owners, including the parks and squares, $60,917.29, and deducting from this sum the amount charged to the public squares would leave the owners of other lots liable to assessment in the sum of $47,786.48, instead of $54,846.59, which was imposed by the assessors.    So that, whatever con-

struction is given to this ordinance, it is very clear that it has not been followed by the assessors.

It is equally clear that the error which was committed comes within the term legal irregularity. The ordinance directed the work to be done and the expense assessed in a particular manner, and the assessors have made the assessment in violation of the ordinance. For this they had no warrant, and the assessment would be illegal.

This leaves us to the decision of the main question in the case, and which is one of great importance to the city as well as to the owners of property, and that is, whether the common council has power to assume a portion of the expense of paving the streets, and pay therefor, out of the treasury, and whether the assessors have a right to disregard such act of the city authorities, and charge the whole cost on the owners, notwithstanding the direction in the ordinance to the contrary.

The validity of any agreement with the rail road companies to pave between their tracks is also incidentally to be considered in disposing of this question.

The authority over the streets, and the regulating and repairing of them, was originally conferred upon the common council by the old charters of the city. They were authorized to lay out, alter, mend and repair all the streets and highways then or thereafter to be laid out in the city of New York, in such manner as they should judge to be necessary or convenient.

This necessarily involved the right to pay for the same out of the treasury. No special authority to assess the expense on the owners was given, and if not, it must, of course, be paid out of the treasury. This provision of the charter still remains in force.

On the revision of the laws relating to the city in 1813, provision was made for assessing the expense of improvements of streets in a more enlarged form than had been previously enacted in the statutes of 1787 and 1801,

The 175th section, (2 *R. S. p.* 407,) provides that it shall be lawful for the mayor, &c. to direct the pitching and paving the streets thereof, and cause estimates of the expense of conforming to such regulations to be made, and a just and equitable assessment thereof among the owners or occupants of all the houses and lots intended to be benefited thereby, in proportion to the advantage which each may be deemed to acquire. It then authorizes the common council to appoint assessors to make such estimate and assessment.

It is apparent, from the wording of this and the subsequent section, that it was intended that the estimate and assessment were both to be made before ·the work was done ; as the 176th section provides for making a second assessment, if it shall afterwards appear that a greater amount has been expended in doing the work than the sum then estimated and collected. (*Doughty* v. *Hope,* 3 *Denio,* 249.) The act of 1859, section 15, changes the mode of appointing these assessors, but does not give them additional powers. They are charged with the duty of making estimates and assessments required by law for all improvements, directed by corporation ordinance, for which an assessment may be made. There is nothing in these provisions inconsistent with the powers conferred by the ancient charters of the city, but they are in addition thereto. The act of 1813 confers on the city, as did the previous acts of 1787 and 1801, the right to assess the expense of pavements upon the owners or occupants of houses and lots benefited, but it in no way deprives them of the previous powers conferred on the city ; nor is that of 1813 obligatory — it is only permissive. It makes it lawful to assess, but it does not require them in all cases to do so. Again, the act of 1813 authorizes the common council to make the assessment just and equitable among the owners benefited in proportion to the advantage acquired, and the distribution of the expense by the assessors has no validity until ratified by the common council. The power

to review and ratify the assessment necessarily implies the power to correct.

The 15th section of the act of 1859, (*Valentine's Laws of N. Y. p. 1280,*) confines the powers of the assessors to improvements directed to be done by corporation ordinances. Unless the work is directed by an ordinance, they have no power to act; they must look to the ordinance for their authority.

In order to ascertain what was directed to be done, we must take the ordinance of October, 1858, and of September, 1859, together, as forming one, and that would direct the pavement of the Eighth Avenue, excepting the portion between the outer rails of the rail road, and it directs the assessment of one third on the owners, one third on the treasury and one third on the rail road. It is evident such was not the intent of the parties. The first ordinance directed one third of the whole expense to be so assessed, including the expense of paving between the rails, and it was no doubt the intent of the common council to allow the rail road company to assume the payment of the expense of repairing between the rails as an equivalent for the third of the expense which they were obliged to pay. If the ordinance had so stated, there would have been no difficulty in deciding this case. And even without it, if the assessment had been made by following such intent, and imposing one half of the amount to be paid upon the city and the other half upon the owners, the assessment might perhaps be upheld on this ground. But, as I have before stated, a larger amount has been so assessed, one which, under no view of the case, can be considered one third of the expense.

It seems to me that the common council has an undoubted right to assume the pavement of any street in the city, and pay for the same out of the treasury. Suppose some special mode of pavement is desired for public purposes, which in no sense can be beneficial to private owners, may not the common council order the same done, and pay the whole or any

part of the expense out of the treasury ?    This is the case
with all the avenues.    A different and more expensive mode
of pavement is required for public travel than is required for
private use.    It is not just nor equitable to assess upon the
owners of property the whole expense which is no benefit to
them, but which is of great convenience to the public, and
when the public authorities assume a part of the burthen, so
as to leave the owners liable to their fair proportion of the
expense according to the benefit received by them, I think
no provision of law is violated.

So, also, in cases in which a rail road company, for the
privilege of the grant which the company has received,
assumes the obligation of paying the expense of paving be-
tween the rails, I can see no propriety in charging upon the
owners the expense of paving that part of the avenue, and
especially when, by reason of the grant for the purpose of a
railway, the expense of paving is thereby increased.

A contrary system has for a long series of years been adopted
in this city.    In 1824 an ordinance was passed by the com-
mon council, assuming the pavement of streets after they
had once been paid for by the owners, subsequent to that date.
And at various times, when the grading of avenues was
attended with so much expense as to work great injustice to
the owners, if the whole cost had been charged upon them,
the common council assumed the payment of a part of such
grading as a benefit to the public.

It appears to me that the 175th section of the act of 1813
does not prevent such a course on their part.    While that
act gives them the power to assess the whole expense on the
owners of lots, yet, if for any reason they think the public
should bear a portion of the expense, they have authority so
to do, and the section referred to is not obligatory.

It is urged on behalf of the applicants, that although the
assessment may have been illegal as made by the assessors,
yet the confirmation of it by the common council was a rati-
fication of it by competent authority, and thereby cured the

In the matter of Turfler.

irregularity. This is not so. The assessment in the first instance was illegal, because not made in conformity to the ordinance of the common council. · A confirmation of it could not cure the illegality. This was held in *Doughty* v. *Hope*, (3 *Denio*, 594,) and it is unnecessary to add any thing on that subject.

It is also urged by the appellants, that the common council had no authority to impose the one third of the expense on the rail road company, and therefore the assessors were not bound to obey it. Whether they had such authority is a question between them and the rail road company, with which the assessors had no right to interfere. Their duty was discharged when they followed the directions of the ordinance. They are not in the discharge of their duties to decide whether the provisions of an ordinance are in all things in conformity to law, and if not, to amend it. They have no such authority. It is their duty to make the assessment as provided for in the ordinance. If the common council has erred, some other means of correcting their errors must be resorted to than an appeal to the judgment of the assessors. If no such authority exists, then the rail road company will dispute the payment, and, if successful, the corporation must provide other means for the payment of the contractor.

Other questions have been raised as to the legality of the confirmation which I do not deem it necessary now to examine.

Having arrived at the conclusion that the assessors are not independent in their action of the provisions contained in the ordinance directing the assessment, and that the common council have authority, either in whole or in part, to pay the expense of paving an avenue or street out of the treasury, and to assess the balance on the owners, it follows that the assessment made in this case was illegal, and that the order vacating it was right and should be affirmed.

Order affirmed.

[NEW YORK GENERAL TERM, May 2, 1865. *Ingraham*, *Welles* and *Clerke*, Justices.]