Matter of the Application of the BRONX PARKWAY COMMISSION for a Writ of Mandamus Directing the Common Council and the Board of Estimate and Apportionment of the City of Yonkers to Cancel a Certain Assessment on Premises Belonging to Said Commission.

(Supreme Court, Westchester Special Term, March, 1919.)

Taxes and assessments — when lands devoted to public use not assessable for local improvements — constitutional law — article III, section 18 of the New York State Constitution — statutes — when writ of mandamus to cancel an assessment granted — Laws of 1907, chap. 594.

The present legislative policy is never to include within the purview of statutes providing for local improvements lands devoted to public use except by express provisions couched in words specifically designating property of that character.

The "Bronx Parkway Commission," created a body politic by chapter 594 of the Laws of 1907, to preserve the waters of the Bronx river from pollution, is not within the inhibition of section 18 of article III of the Constitution of the state, which declares that the legislature shall not pass a private or local bill granting to any person, firm or corporation an exemption from taxation on real or personal property.

The statute of 1907 declares that the lands acquired by said commission shall constitute a public parkway and by chapter 757 of the Laws of 1913 it was provided that said lands should be exempt from taxes and assessments. By chapter 646 of the Laws of 1917, as amended by chapter 82 of the Laws of 1918, the "Bronx Valley Sewer Act" (Laws of 1905, chap. 646), by which the construction of a sanitary trunk sewer and sanitary outlet sewer in Westchester county was authorized, was supplemented and a district or area of assessment created with provision that no lands within the Bronx valley sewer district should be exempt from the taxes and assessments imposed by said act of 1917, except such as belong to the United States or are used as a cemetery. Upon granting an application for a writ of mandamus to cancel an assessment upon the property of the said commission for said sewer, *held*, that the supple-

mental statute of 1917 did not impliedly repeal the exemption of relator's lands from the assessment imposed; that said assessment was void and that relator was entitled to the writ.

APPLICATION by Bronx parkway commission for mandamus directing the common council and board of estimate and apportionment of the city of Yonkers to cancel an assessment upon its property for the Bronx valley sanitary sewer.

Theodosius F. Stevens, for petitioner.

William A. Walsh, corporation counsel, for respondents common council and board of estimate of the city of Yonkers.

William A. Davidson, for respondent county of Westchester.

YOUNG, J.   The relator seeks a writ of mandamus directing the cancellation of an assessment upon its property for the Bronx valley sanitary sewer.

The relator was created by chapter 594, Laws of 1907, entitled "An act to provide for preserving the waters of the Bronx river from pollution; creating a reservation of the lands on either side of the river; authorizing the taking of lands for that purpose and providing for the payment thereof, and appointing a commission to carry out the purposes of the act in relation to purchase and condemnation of lands and payment therefor under the authority of said act." The act provides that certain land therein described extending along the banks of the Bronx river shall be set aside and reserved, and shall constitute, when acquired and improved, a public parkway for public use.  § 1.

It further provides for the appointment by the

governor of a commission of three citizens of the state, one a resident of the borough of Manhattan, one of the borough of The Bronx, and one of the county of Westchester, to be known as the Bronx parkway commission. § 2. The commissioners and their successors are created a body politic, and are given broad general powers for the regulation and government of the parkway. § 5. They are also given power to take in fee or otherwise by purchase, covenant or eminent domain the lands described and any rights, interests or easements therein (§ 7), and the construction and maintenance of the park is declared to be for a public purpose. The original act provided that the title to all real estate required should be taken in the name of the commission in fee. § 10. This section was amended by chapter 757 of the Laws of 1913, by adding thereto the words, " and shall be exempt from taxes and assessments."

The act also contains provisions whereby one-fourth of the amount paid for acquiring the lands and the expenses of the commission, etc., shall be paid by the county of Westchester and three-fourths by the city of New York, the amounts raised by the county of Westchester for this purpose to be paid over to the comptroller of the city of New York and to be applied in accordance with the provisions of the act.

By chapter 646 of the Laws of 1905 the construction of a sanitary trunk sewer and sanitary outlet sewer in the county of Westchester was authorized and a commission created for that purpose with power to acquire the necessary lands and construct the sewer. The moneys necessary for such construction were directed to be raised by the issue of bonds.

For the purpose of raising money to meet such bonds and interest and for maintenance of a sewer the original act relating to this sewer provided for the

levy upon the real estate in each municipality within the area described and set forth in the maps filed under the act, the proportion in which the assessed valuation of such real estate bore to the assessed valuation of the entire property shown on the maps, and the local authorities of each municipality should assess such amount *pro rata* on the real estate within the area benefited; such assessment to be subject to a hearing and grievance day as other assessments in such municipality, and said taxes so levied to be collected in the same manner, etc. § 14. The act also gave to the board of supervisors of Westchester county power annually to assess the proportionate cost of the maintenance of the sewers in the same manner. § 19.

By chapter 646 of the Laws of 1917 (amended by chapter 82 of Laws of 1918) the original act was supplemented and a district or area of assessment was created and it was provided that ''All lots or parcels of land within such district or area are declared to be benefited by the construction and maintenance '' of the sewers in question, and '' except as hereinafter provided, shall be subject to the taxes and assessments imposed by this act.''

The lands in the city of Mt. Vernon are excepted from this provision and a different method provided for that city. It is then provided: '' That no lots or parcels of lands in such Bronx valley sanitary sewer district shall be exempt from the taxes and assessments imposed by this act except such as may belong to the United States or are used as a cemetery.'' § 1. The act further provides for the use of the annual assessment rolls for the purpose of this '' Bronx Valley Sanitary Sewer District tax,'' and provides that the local assessors shall make such rolls in such forms as (a) shall show and identify the lots or parcels in such city or town within the sewer district, and

among such lots shall be included "All lots or parcels of land exempt or partially exempt from taxation by the provisions of any general local or special law, with the exception of lots or parcels of land belonging to · the United States or used for cemetery purposes, and all such exemptions so shown or identified shall be assessed for the tax provided for in this act in the manner provided by law for lots or parcels of land which are not exempt from taxation;" and (b) show separately as a distinct item the aggregate assessed value of all such lots or parcels. In such aggregate assessed value " shall be included the assessed values of lots or parcels of land otherwise exempt from taxation, but which are to be assessed for the tax provided for in this act as herein provided." § 2.

Section 3 provides for a hearing in the manner provided by law. Section 7 provides for an apportionment of " the aggregate tax " among the several towns and cities, and section 11 provides for the extension of the amount of such tax so apportioned in the separate column provided against the lots or parcels appearing on the assessment roll to be within the sewer district, and for the issue of a warrant to the collector and for the lien of said tax. Section 12 provides that this sewer district tax shall be part of the annual tax.

Section 13 repeals " all acts or parts of acts in conflict " with the act in question. The Bronx valley sewer has been constructed and is being maintained pursuant to the provisions of the act authorizing it, and the amendments and supplements thereto, and under the provisions of the supplementary act of 1917 the authorities of the city of Yonkers have levied the assessment complained of and have included in such assessment certain lands acquired by the relator in the city of Yonkers for the Bronx parkway.

The relator contends that this assessment is void and should be canceled because under the amendments of the Bronx Parkway Law of 1913 it is exempt from all taxes and assessments. The respondents, on the other hand, contend that the act of 1917 supplementing the Bronx Sewer Law has effected a repeal of the amendment of 1913 to the Bronx Parkway Act so far as the assessment for the sewer is concerned. They also question the right of the relator to maintain mandamus for the relief it seeks.

To maintain this proceeding relator relies upon the cases of *Matter of Montefiore Home* v. *Prendergast,* 159 App. Div. 644; affd., 211 N. Y. 549, and *Brooklyn Children's Aid Society* v. *Prendergast,* 166 App. Div. 852; affd., 215 N. Y. 705.

In the *Montefiore* case the statute under which the relator claims exemption specifically directed the officials having charge of taxes, assessments, etc., to cancel the same, and a clear legal duty existed which it was held might be enforced by mandamus.

In the *Brooklyn Children's Aid Society* case the relator relied upon the provisions of section 958 of the New York city charter, which gave the comptroller, with the advice and consent of the corporation counsel, power to cancel void assessments for local improvements, and it was held that mandamus would lie to compel the officials named to cancel a void assessment for local improvements.

In the case at bar the relator relies upon a somewhat similar provision in the Yonkers supplemental charter (Laws of 1908, chap. 452, art. V, § 19), which provides in substance that the common council with the consent of the board of estimate and apportionment may cancel any assessment for local improvements believed by it to have been erroneously assessed.

Respondents contend, however, that the relator is

confined to the remedy provided by section 165 of the Second Class Cities Law, which is applicable to the city of Yonkers. That section provides in substance that no action or proceeding shall be maintained to cancel any assessment or tax for local improvement, except in the manner provided thereby. It then provides in substance, among other things, that if in the proceedings relative to an assessment or tax entire absence of jurisdiction on the part of the officers to levy or assess the same is alleged, any party aggrieved may apply to the Supreme Court for an order vacating such assessment, and that such application shall be made within twenty days after the confirmation of the assessment. It will be seen, therefore, that this statute covers void assessments as well as those unjust and inequitable by reason of fraud or substantial error. In this respect it differs from the somewhat similar remedy provided by the New York city charter held in the *Brooklyn Children's Aid Society Case, supra,* not to apply to void assessments. Although the Bronx Valley Sewer Law makes no specific provision for a review of the assessments nor any general reference to local charters or general laws upon that subject, it does make them a part of the annual tax and provides that the lien thereof may be sold or foreclosed as general city taxes (§ 12), and the original act, to which the law of 1917 is supplementary, provides in substance that its provisions shall not prevent resort to any statute relating to the levy and collection of taxes and " to all other proceedings which may be proper for the purposes of this act." Laws of 1905, chap. 646, § 12. I think, therefore, it was intended to subject them to all the provisions of the local charters and general laws applicable to the respective localities made for the review, correction and cancellation of assessments.

Supreme Court, March, 1919.        [Vol. 106.

But it does not follow that relator has lost any remedy by reason of its failure to pursue the one provided by section 165 of the Second Class Cities Law. It is inconceivable that the legislature intended by section 19 of article V of the Yonkers charter to clothe the respondents with an authority to cancel erroneous assessments which they could never properly exercise if the remedy provided by the Second Class Cities Law were exclusive. In my opinion, the charter provisions were intended to supplement those of the Second Class Cities Law and to provide an additional means of relief to one aggrieved by an erroneous assessment.

The Second Class Cities Law was originally enacted in 1906; the Yonkers supplemental charter in 1908. The re-enactment of the Second Class Cities Law in the Consolidated Laws of 1909 did not effect a repeal of the provisions of the Yonkers charter, because chapter 596 of Laws of 1909, which prescribes rules for the construction of the Consolidated Laws, provides that "All special laws in force at the time of the enactment of such Consolidated Laws shall be of the same force and effect as they were before the enactment of such Consolidated Laws." See *Matter of Montefiore Home* v. *Prendergast, supra.*

These two statutory enactments are, therefore, coexisting provisions of law, each entitled to full force and effect, and the provisions of the Yonkers charter referred to furnish a basis for mandamus to compel the cancellation of this assessment, if void.

Respondents claim, however, that the power granted to the common council and the board of estimate is discretionary, and depends upon their *belief* of the erroneous character of the assessment. I think not. The grant of power creates as well a duty to exercise such power, and such duty does not depend upon the belief of the authorities named. If the assessment is

void in law, they are deemed to so believe, and the exercise of the duty of cancellation may be compelled.

I am also of the opinion that the writ may issue even though relator originally had another remedy either by certiorari or under section 165 of the Second Class Cities Law. The granting or withholding of the writ under such circumstances is within the sound discretion of the court, and it has been held that while a peremptory writ of mandamus will not ordinarily be granted where the relator has an adequate remedy at law, the rule is not exclusive and the writ will be issued if the relator's right to the relief is clear. *People ex rel. Treat* v. *Coler,* 56 App. Div. 459; affd., 166 N. Y. 144.

I also think that this proceeding involves something more than the assertion of a mere private right. The relator is a public body, created for a public purpose, and the legal duty sought to be enforced is in my opinion a public duty, and no previous demand was therefore necessary. *People ex rel. O'Brien* v. *Cruger,* 12 App. Div. 536.

I think also that the respondents are the proper parties to whom the writ should be directed if the assessment is held invalid. The assessment roll is not now under the control of the assessors, but, as I have pointed out above, is in the control of the respondents.

The remaining question as to whether the property of the relator is subject to the assessment in question is one of considerable difficulty. The authorities relating to this subject are not entirely harmonious.

In *Matter of Turfler,* 44 Barb. 46, it was held that for the purpose of a street paving assessment the corporation of the city of New York was the owner of the public squares and is to be assessed in the same manner as individual owners are assessed for their property.

In *Matter of City of New York* (*Church Street*), 49 Barb. 455, it was held that the city parks and markets have the same value as property as other land and should bear a *pro rata* assessment for public improvements.

In *People ex rel. Connelly* v. *Reis,* 109 App. Div. 749, it was held that it was error to omit from a sewer assessment property in the assessment district belonging to the city liable to assessment. The property omitted consisted of a number of parcels fronting upon the improvement. It does not appear that they were public parks or squares or devoted to a public purpose.

In *Hassan* v. *City of Rochester,* 67 N. Y. 528, it was held that the omission of certain lots belonging to the state within the assessment area invalidated the assessment. In that case also it did not appear that these lots were devoted to a public use and the precise question decided was based upon the provisions of the Rochester charter to the effect that all sums to be raised by the common council shall be assessed upon all real and personal estate in said city, but that no property which shall be exempt from taxation by the general laws of the state shall be liable to be assessed for the ordinary city or county taxes, '' but may be assessed and taxed for local improvements; but public squares and parks of said city shall not be liable to be assessed for any purpose,'' and it was held that this provision included the lands of the state. The court also said: '' It will be seen that the section of the charter cited is broad and comprehensive in its terms, and there is no ground for claiming that this provision was intended to apply only to property of churches, schools or other institutions which this statute exempts from ordinary taxes.''

In *Elwood* v. *City of Rochester,* 43 Hun, 102, it was held, on the other hand, that lands belonging to the

state occupied by the Erie canal lying within the territory designated by the common council were not liable to assessment for local improvements, distinguishing the *Hassan Case, supra.* This case was affirmed by the Court of Appeals (122 N. Y. 229), but without passing upon that question.

In *City of Schenectady* v. *Trustees of Union College,* 144 N. Y. 241, it was held that the land lying in an open public street was not a city lot and that the owner of the fee of the street was not properly termed the owner of a lot, and was not liable to assessment for a public improvement.

In *Smith* v. *Buffalo,* 159 N. Y. 427, it was held that public streets in the city of Buffalo were not assessable for a local improvement. The court said: " The general custom in this state is not to assess public streets even for local improvements, and if the legislature had intended to depart from the established usage, we think it would have expressed its intentions in specific language." *City of Schenectady* v. *Trustees of Union College, supra; People ex rel. Davidson* v. *Gilon,* 126 id. 147; *People ex rel. City of New York* v. *Board of Assessors,* 111 id. 505; *Mansfield* v. *City of Lockport,* 24 Misc. Rep. 25, 36.

In *People ex rel. City of New York* v. *Board of Assessors, supra,* it was held that the property of a municipality acquired and held for governmental and public uses and used for public purposes is not a taxable subject within the purview of the tax laws unless specially included. The case last cited related to a general city tax and not to an assessment for a local improvement. It would seem, therefore, that the court in *Smith* v. *Buffalo, supra,* intended to treat the two classes of assessments in the same manner notwithstanding the distinction pointed out in *Hassan* v. *City of Rochester, supra,* where it was said in substance that although property might be exempt from

general taxation it might still be subject to assessment for local improvements.

In *Mansfield* v. *City of Lockport,* 24 Misc. Rep. 25, 36, it was held that lands acquired and held by the state as part of the Erie canal were properly omitted from an assessment for public improvements, distinguishing the *Hassan Case, supra.*

In *People ex rel. Davidson* v. *Gilon,* 126 N. Y. 147, it was held that the fact that rails, ties and tracks of a street surface railroad are property and subject to taxation generally afforded no sufficient reason for taxing them for street improvements when the law has not made them specially assessable for such purposes.

In *Matter of City of New York (East 136th Street),* 127 App. Div. 672, it was held that the unoccupied part of a strip of land 100 feet wide acquired by a railroad for a roadbed pursuant to its charter, 30 feet of which is occupied by tracks, should not be substantially assessed for a street improvement, since its value for the purpose to which it is devoted is not enhanced by the improvement. The reason given by the court for this ruling is that " Real property acquired by a railroad for the purpose of its incorporation is deemed to be acquired for public use " (p. 675), and " The principle which underlies an assessment for an improvement is that the property assessed is directly benefited and enhanced in value by the improvements, so that the assessment will represent the difference between the value of the property before and after the assessment." P. 676.

In *Matter of Commissioner of Public Parks,* 47 Hun, 302, it was held that the omission to assess for benefits the roadbed of the New York and Harlem railroad within the area of an assessment for public improvement, was proper; that such land could only be used.

for railway purposes, and as such no benefit whatever was derived from the improvement. P. 304.

In *New York, N. H. & H. R. R. Co.* v. *Port Chester,* 149 App. Div. 893; affd., 210 N. Y. 600, it was held that a railway company whose right of way crosses a street of a village by means of a bridge and abutments is not liable for assessment for the improvement of the village streets as no special benefits inure to its right of way from such improvements. The court said: '' we do not think it was intended by the Legislature that such right of way should be taxed for these street improvements. The respondent's right of way is exclusively devoted to a public use. * * * It is diffi-cult to see how such property can be benefited by the improvement of a village street passing under it. The only benefit that the learned corporation counsel specifically claims will inure to the railroad company from these improvements is an increase in its business following the increase in business and population resulting to the village from the improvement of its streets. This alleged benefit is too conjectural, fanci-ful and remote for consideration, and it seems highly improbable that the Legislature intended to tax the right of way on any such assumption. The corpora-tion counsel's reasoning, if valid, would logically per-mit the taxation of any railroad right of way running through any village or city for general street improve-ments therein, howsoever far from its right of way. Moreover, such a rule confuses the appellant's busi-ness growth with the value of its real estate.''

In that case it was claimed that the special act pur-suant to which the tax in question was assessed repealed by implication the general statute which pro-vided that a highway passing under any railroad should be maintained and kept in repair by the municipality, but the court said that notwithstanding

the language of the special act that " No abutting or adjoining property shall be exempt from assessment under this act," it seemed highly improbable that the legislature intended to include the railroad right of way over the streets contrary to the general policy established by the Railroad Law; that it was much more probable that this clause was devised to include churches and charitable institutions which, although benefited by the proposed improvements, would not otherwise have been taxed. " In the absence of a clearly and unmistakably expressed legislative intention the act in question should not receive a construction necessitating the imposition of a tax upon the respondent's right of way contrary to the general policy of the State and for improvements of no direct benefit to the property taxed, and the constitutionality of which is at least open to question." P. 896.

In *People ex rel. New York, W. & B. R. Co.* v. *Waldorf,* 168 App. Div. 473, it was held that railroad property occupied and used for the purpose of a station should not be assessed for a street widening improvement.

The case last cited was affirmed as to the assessment against the railroad company by the Court of Appeals. 217 N. Y. 96, 99, 100.

In *New York, W. & B. R. Co.* v. *New Rochelle,* 170 App. Div. 915, the Appellate Division of this department in affirming a judgment setting aside an assessment against the railroad property said: " For a long course of years, whenever the courts in this State have reviewed assessments for local improvements, made by bodies other than the Legislature, they have determined that because there is no benefit the right of way of a railroad corporation is not assessable. The Legislature may doubtless change this policy and its action foreclose judicial review, because there would be

enough reason to support an argument in favor of the assessment. The intention to subject that class of property to such assessment must, however, be clearly and unmistakably expressed, and may not be gathered from a provision in the city charter which simply imposes the cost upon abutting property and directs an assessment thereon in proportion to its frontage.'' Citing *People ex rel. New York, W. & B. R. Co.* v. *Waldorf, supra.*

In *Matter of City of New York (Blondell Avenue)*, 180 App. Div. 430, it was held that on the opening and extending of a street lands owned by a railroad corporation and used and held as an approach to its station, cannot be assessed for a benefit while used for such railroad purposes, the court saying: '' This property is used exclusively for the Westchester station upon the Harlem division of the New York, New Haven and Hartford Railroad Company. It is adjoining and necessary to the use of its roadbed in the exercise of its franchise. It is well settled that the roadbed of a railroad company cannot be assessed for local improvements. There has been a lack of harmony in the courts of several of the States upon the question of the liability of property used as a railroad station to such assessment. The question would seem to be settled in this State.'' Citing *Matter of City of New York (East 136th Street)* and *People ex rel. N. Y., W. & B. R. Co.* v. *Waldorf, supra.*

In *Matter of City of New York (Seneca Avenue)*, 98 Misc. Rep. 712, it was held that the same rule applied to the acquisition of land for street openings as applied to the assessment for benefits, *i. e.,* property acquired for a public purpose cannot be condemned for another purpose (except by express authority), nor can it be assessed for an improvement made. Citing *Matter of City of New York (East 136th*

*Street*) ; *New York, N. H. & H. R. R. Co.* v. *Port Chester*, and *People ex rel. New York, W. & B. R. Co.* v. *Waldorf, supra.*

In *City of Rochester* v. *Town of Rush*, 80 N. Y. 302, a system of water works constructed by the city of Rochester in the town of Rush was held to be property held for public purposes, and that in the absence of an express legislative declaration authorizing it, it was not subject to taxation.

In *Matter of Hamilton*, 148 N. Y. 310, it was held that the clause of the Collateral Inheritance Tax Law exempting from taxation bequests to societies, corporations and institutions now exempt by law from taxation was not intended to apply to bequests to municipal corporations, because property belonging to a municipal corporation " is never supposed to be included in the terms of any law providing for the imposition of taxes, however general it may be, not because it is exempt, in the sense in which the term is generally understood, but for the reason that in the nature of things it never was and never can be taxable; " and therefore " when the legislature excepted from the operation of the law * * * ' the societies, corporations and institutions now exempted by law from taxation,' it could not have referred to the state itself or any of its political divisions." P. 314.

Both of the last two cited cases were decided before the enactment of the General Tax Law in 1896 and subsequent to such enactment the Court of Appeals in *People ex rel. City of Amsterdam* v. *Hess,* 157 N. Y. 42, held that property held by a municipal corporation for public use located beyond the boundaries of the municipality was subject to general taxation under the General Tax Law of 1896. The court said, among other things, that prior to that statute property of a municipal corporation was not liable to taxation, not

through exemption, but upon common-law principles; but that section 3 of the Tax Law which provided "All real property within this state, and all personal property situated or owned within this state, is taxable unless exempt from taxation by law," was more comprehensive in its terms than the old statute which read, "All lands and all personal estate within this state, whether owned by individuals or by corporations, shall be liable to taxation, subject to the exemptions hereinafter specified;" that the law of 1896 clearly embraced property owned by municipal as well as other corporations and subjected it to taxation unless exempt by law, and that the exemption contained in section 4 of the law of " The property of a municipal corporation of the state held for public use, except the portion of such property not within the corporation," limits exemption of property held by a municipal corporation for public use to so much of it as lay within its boundaries.

A careful analysis of the cases above cited seems to establish the principle that property devoted to public use is not taxable even for local improvements, unless expressly so directed by legislative enactment. The question then arises, does the Bronx Valley Sewer Act so provide? The answer to this question would not be difficult if based upon the principles relative to the construction of statutes of this character contained in the earlier cases. Thus it would seem from the rulings in the *Hassan* and *Hess* cases, *supra,* that the words " all property " would include property of a municipal corporation or property held for public use. It would seem therefore that the language contained in section 1 of the Bronx Valley Sewer Act creating an area of assessment " that all lots or parcels of land within such district or area are declared to be benefited  *  *  *  and except as hereinafter provided,

shall be subject to the tax or assessment imposed by this act,'' is equally broad and sufficiently comprehensive to include the lands of the Bronx parkway held for public use as they are not within the exceptions noted.

But the problem is not so simple of solution because some of the later cases seem to have modified this doctrine and to indicate an extremely strict construction of statutes of this character, holding that it is the legislative policy never to include within the purview of statutes providing for assessment for local improvements lands devoted to public use except by express provisions, not merely general language however broad and comprehensive, but by words specifically designating property of that character. This I understand to be the present legislative policy as the courts have now defined it.

For example, it was held by the Appellate Division of this department that the legislature did not intend by a provision in such a statute that '' no abutting or adjoining property shall be exempt from assessment '' under the act in question, to include lands of a railroad corporation held for public use, and this decision was affirmed by the Court of Appeals. *New York, N. H. & H. R. R. Co.* v. *Port Chester, supra.*

The language of the statute under consideration in the *Port Chester* case would seem, although negative in form, to be equally as strong as the statutes under consideration in the *Hassan* and *Hess* cases affirmatively comprehending '' all property '' within the scope of the law. In other words, to say that no property shall be exempt seems to me to be equivalent to saying that all property shall be taxed. Indeed the Bronx Valley Sewer Law also provides '' that no lots or parcels in such Bronx Valley Sewer District shall be exempt from the taxes and assessments imposed by this act,'' except those of the United States and cemeteries.

It should be noted, however, that in none of the cases to which I have above referred was any property devoted to public use held to come within the general language of a tax law with two exceptions, where in the *Turfler* and *Church Street Cases, supra,* it was held that public squares, parks and markets belonging to a city were subject to assessment for local improvements.

It seems to me, however, that the weight of authority is against subjecting the lands of the Bronx parkway to assessment under the Bronx Valley Sewer Act, because although the ordinary meaning of the broad language used would seem to include such lands, such inclusion would be contrary to the legislative policy as now defined by the courts. I think this is the correct principle to be applied, as well as being just and proper, for I am convinced that lands of this character held for the public use of all our people should not be held taxable, either generally or for local improvements, except where an express intention of the legislature so to do clearly and unmistakably appears. I can see no reason why the right of way of a railroad corporation should be free from assessment because devoted to a public use and public parks subjected thereto. The public use to which a railroad right of way is devoted is a limited one and is for private profit as well. On the other hand, the use of a public parkway is for all the people, restricted only to park purposes, and entirely without private profit.

If I am correct in this view the question whether the exemption from taxation and assessment contained in section 10 of the Bronx Valley Parkway Law, which was added by amendment in 1913, is constitutional, valid and unrepealed, is unimportant, because without such exemption the lands in question would not be subject to this assessment.

But assuming a contrary view, I am still of the opinion that relator's lands are not subject to this assessment. The exemption in question is, I think, constitutional. While relator is not a municipal corporation the legislature has defined it to be a body politic, and it was clearly created for a municipal and public purpose. Such a governmental body is not in my opinion within the inhibition contained in section 18 of article III of the New York Constitution, which provides that the legislature shall not pass a private or local bill granting to any person, firm or corporation an exemption from taxation on real or personal property. A similar constitutional inhibition contained in the same section against the passage of a private or local bill granting to any corporation, association or individual the right to lay down railroad tracks has been held not to include municipal or other governmental corporations. See *Sun Printing & Publishing Co.* v. *Mayor,* 152 N. Y. 272.

Nor do I think the Bronx Valley Sewer Act of 1917 impliedly repeals such exemption. I can see no distinction in principle between the case at bar and *New York, N. H. & H. R. R. Co.* v. *Port Chester, supra.* Our Appellate Division held in the latter case that a statute providing that "no abutting or adjoining property shall be exempt from assessment" under an act relating to local improvements, did not repeal a statute providing that a highway passing under any railroad should be maintained and kept in repair by the municipality.

My conclusion therefore is that relator's property is not subject to assessment under the Bronx Valley Sewer Act; that the assessment attacked is void, and that relator is entitled to the writ sought. Application granted, but without costs.

*Application granted, without costs.*