In the Matter of the Assessment of the Cost of the Improvement of Edgewood Avenue in the City of Mount Vernon. Philip Alpert et al., Petitioners; City of Mount Vernon, Respondent.

Supreme Court, Special Term, Westchester County, April 24, 1948.

*Simberkoff, Haberman & Simberkoff* for Philip Alpert and another, petitioners.

*Harold Borgwald, Corporation Counsel (Walter B. Solinger, II,* of counsel), for City of Mount Vernon, respondent.

FLANNERY, J. The petitioners are the owners in fee of the real property commonly known as 18 Edgewood Avenue in the city of Mount Vernon, New York, shown and designated on the official tax map as Lot 9, Block 2004, which they purchased from the respondent on or about October 23, 1945. The petitioners' attorneys assert that before petitioners purchased the property the attorneys were informed by the comptroller of the city that Edgewood Avenue was a fully improved street. The respondent is at some pains to point out that the purchase was subject to the standard terms of sale which provided that the sale was subject to any state of facts a personal inspection might show and that the public records of the city department of public works at the time indicated there was no lateral sewer in Edgewood Avenue. The attorneys for the petitioners reply that the comptroller assured them the street was fully improved and that his statement was apparently supported by a personal inspection by the petitioners' attorneys which showed a manhole cover seventy feet east of Gramatan Avenue, and one at the corner of La Porte Avenue, both on Edgewood Avenue and since there had been a swimming pool on the premises, reasonable observation indicated the availability of proper sewers.

Some time after the purchase of the premises while the owners were constructing a home, which the city has assessed for tax purposes at $35,400 in addition to $8,000 for the land, a total of $43,400, the petitioners discovered that there was no sewer between the manhole seventy feet east of Gramatan Avenue and the manhole at the junction of Edgewood and La Porte some eighty odd feet east of their property and they petitioned the common council by letter signed by Philip Alpert, dated July 22, 1946, " to extend the existing sewer on Edgewood Avenue " to their residence on the south side of Edgewood Avenue " approxi-

mately 205 [feet] east of Gramatan Avenue '' as indicated on a sketch accompanying the petition. A print of this sketch was offered as Exhibit C with the affidavit of the commissioner of assessment and taxation in opposition to the application and shows a request for an extension of approximately 185 feet but this cannot be verified because no scale is declared.

The common council through the deputy city clerk replied and requested the presence of Philip Alpert at its next meeting to be held August 14, 1946. The petitioners apparently did not appear at the meeting but on September 11, 1946, at a subsequent meeting, the common council adopted an ordinance, No. 57, September 11, 1946, '' Authorizing and Directing the Construction of a Twelve Inch Lateral Sewer in Edgewood Avenue From a Point Approximately 70 Feet East of Gramatan Avenue to a Point Approximately 270 Feet East of Gramatan Avenue '' under the control and direction of the commissioner of public works, and according to plans and specifications made by him which were thereby approved and adopted. The ordinance further authorized and directed the board of estimate and contract to proceed as provided by law to carry out '' the provisions of this ordinance '' and then in section 3 provided as follows:

'' § 3. When such improvement shall have been completed, the whole of the expense thereof shall be apportioned and assessed, according to law, to the end that the same may be confirmed and collected upon the property included within the following boundaries and description, being the property hereby deemed to be benefited thereby, and hereby established as the district of assessment therefor:

'' ALL lots, pieces or parcels of land fronting or abutting on Edgewood Avenue from a point approximately 70 feet east of Gramatan Avenue to a point approximately 270 feet east of Gramatan Avenue.''

A subsequent section directed the commissioner of public works '' to make an accurate map showing the several parcels of land within the district of assessment hereby established and to file the same with the Commissioner of Assessment and Taxation.'' Section 6 provided that the ordinance should take effect upon its approval by the board of estimate and contract. The board of estimate and contract approved the ordinance September 13, 1946, and in the resolution of approval directed the clerk to advertise for bids for the construction. This was done and the notice, published by the clerk over date of September 13, 1946, contained, among other things, the following:

" When such improvement shall have been completed, the whole of the expense thereof shall be apportioned and assessed, according to law, to the end that the same may be confirmed and collected upon the property included within the following boundaries and description, being the property hereby deemed to be benefited thereby, and hereby established as the district of assessment therefor:

" ALL lots, pieces or parcels of land fronting or abutting on Edgewood Avenue from a point approximately 70 feet east of Gramatan Avenue to a point approximately 270 feet east of Gramatan Avenue."

On October 1, 1946, the board of estimate and contract accepted the bid of the lowest bidder. By a letter dated July 7, 1947, the commissioner of public works certified that the public improvement had been performed and completed according to plans and specifications and in a good, substantial manner and maintained for the prescribed period of six months and that the contractor was entitled to the last 10% of the contract price. On July 23, 1947, the council passed an ordinance, No. 31, July 23, 1947, accepting as complete the work performed for this public improvement in which it recited, among other things, that the ordinance No. 57, September 11, 1946, had been approved by the Mayor on September 12, 1946, and had " duly fixed the District of Assessment for said improvement " and declared the improvement complete, and then in sections 2 and 3 of the ordinance provided as follows:

" § 2. The total cost of said work be and the same is hereby fixed at the sum of $1,941.94, all of which is to be borne by the property lying within the District of Assessment for said improvement as heretofore fixed by ordinance of this Common Council.

" § 3. The Commissioner of Assessment and Taxation is hereby directed to prepare a proper assessment roll and report and to assess and charge the expense of such improvement upon the property lying within the District of Assessment for said improvement as heretofore fixed by ordinance of this Common Council, in accordance with the provisions of the statute in such case made and provided."

It is at this point that the record, presented by the petition and notice of motion, the answer of the respondent and the affidavit of Edward F. Hallahan, the commissioner of assessment and taxation, in support thereof, becomes less specific but it appears from Exhibit P attached to Mr. Hallahan's affidavit that, under date of July 7, 1947, or approximately two weeks before

ordinance No. 31, July 23, 1947, one Blanche Newbury Van Noy addressed a long letter of objection to the council. She, or she and Mr. Van Noy, are the owners of Lot 5, Block 2002 which, together with Lot 4, Block 2002, Lot 10, Block 2004 and petitioners' property had been fixed and determined by the two ordinances and the advertisement as the district of assessment for the levy and collection of the costs of the improvement. She wrote that she had sewer service in Gramatan Avenue and did not presently require service on her Edgewood Avenue frontage, although about 160.9 feet of the new sewer lay in front of the portion of her real property abutting on Edgewood Avenue. She referred to the discomfort and inconvenience that the performance of the work had caused her but rested her objection chiefly upon her present independence of the new sewer, and that of the other, older neighbors, and the absolute need for it of the petitioners. The letter definitely suggested dissatisfaction, not only with what had been done but with the new neighbors and was a missive likely to affect the council. unpleasantly.

Under date of July 28, 1947, or about five days after the passage of ordinance No. 31, July 23, 1947, the owner of Lot 4, Block 2002, Mr. Robert T. Brooks, addressed a letter to the members of the council, of which he directed copies also to the mayor, the comptroller and the commissioner of assessment and taxation. This is also included in Exhibit P attached to Mr. Hallahan's affidavit. Mr. Brooks was as dissatisfied as Mrs. Van Noy but his complaint rested on observations more directly aimed at the city and its officials in their relations with all land owners within the district of assessment than at the conflict between the respective rights and interests of the new and old residents. He made it clear that he thought the city should have absorbed part of, or all, the cost of the improvement because by its sale of the real property to the petitioners and the improvements made by the petitioners, it had provided $43,400 worth of assessable property from which it would annually take a tax of about $1,600. He said, ''This is obviously a splendid deal for the City and it will become a ' gold mine ' if the City shall now pass the Cost of the improvement along to the adjacent property owners.'' He suggested that this would constitute a grievous misuse of the city's taxing power and that, although he rejoiced with the city in its unusual investment, he did not wish to share the cost unless he received something tangible for his money. He adverted to the restrictive covenants in the deeds of the development which would make it unlikely that the large parcels of land now used would or could be built upon further to make

the new sewer of immediate practical benefit to others than the petitioners in the district of assessment, and strongly urged that the city should pay the whole cost.

There is no further documentation in the record from which it appears exactly how these letters affected the city fathers and other officers, or what conferences were called or counsel taken. It must, however, be assumed that the messages were not wholly without effect, from the next document, chronologically, in the record, i.e., the assessment roll of August 11, 1947. It consists of two sheets in what is apparently the usual form. The first, or undersheet, shows under the headings "Description of Premises" and "Lot No." the figure "9" and under the subdivision "Location" the block number "Block 2004." The column for feet is blank. The column for name of owner contains "Philip Alpert et al" and the column for amount shows "$1966.94". At the bottom of the page, which is otherwise blank, is the total of $1966.94 marked "Carried forward". The second or upper sheet simply shows "Brought forward $1966.94" at the top and "Total $1966.94" at the bottom, after which appear the recital of execution on the 11th day of August, 1947, at the city of Mount Vernon, and the signature of the commissioner.

Ordinance No. 59, September 10, 1947, was then enacted directing publication of a notice of a hearing to be held October 8, 1947, by the common council "upon the question of the confirmation of the aforesaid assessment roll." The notice dated September 12, 1947, was duly published by the clerk and a letter under date of September 11, 1947, was addressed by the clerk to the petitioners containing a notification of the meeting to be held October 8, 1947, and a statement "The assessment on your property as prepared by the Commissioner of Assessment and Taxation is as follows: Block 2004 Lot 9 . . . . .$1966.94." At the meeting of the council on October 8, 1947, the attorneys for the petitioners appeared in their behalf and filed written objections to the confirmation of the assessment in the form of a letter under that date. The letter objected that the total cost of the improvement had been arbitrarily assessed on the petitioners' property by the commissioner of assessment and taxation in utter disregard of the "resolution" of September 11, 1946, establishing the district of assessment. It referred to the circumstances in which the land was purchased by the petitioners from the city, the assurances of the city comptroller and the physical conditions which appeared to confirm his statement. It referred to the assessable value created by the sale and the peti-

tioners' subsequent improvements; stated that the 200 foot extension was 65 feet more than the petitioners needed but explained their omission to object to this by their reliance on the council's ordinance of September 11, 1946, which provided that the cost be borne by all the owners fronting and abutting on the sewer. The letter also stated that the imposition of the entire cost on the petitioners was unfair, inequitable and unreasonable.

The record presented does not reveal what took place between October 8, 1947, and February 11, 1948, but after a delay of four months the council, on February 11, 1948, enacted ordinance No. 44, February 11, 1948, by which it attempted to confirm the assessment roll, and to levy and assess '' the assessments '' therein on the property '' therein set forth.'' The preamble of the ordinance recites the public hearing of October 8, 1947, and the subject under consideration, and the presentation of both written and oral objections to the confirmation but recites that '' after due investigation and deliberation '' the council had found they had no merit.

On their petition verified March 1, 1948, the petitioners by a notice of motion dated March 1, 1948, and returnable March 17, 1948, applied for a review of the assessment for the local improvement upon the grounds specified in their objections pursuant to section 232 of the Mount Vernon City Charter (L. 1922, ch. 490), namely, that the council lacked jurisdiction to enact ordinance No. 44, February 11, 1948, and that substantial error was committed in the preparation of the assessment roll. The relief sought was an order '' setting aside, vacating, cancelling, annulling, or modifying or reducing the said assessment levied '' in ordinance No. 44, February 11, 1948, '' insofar as the same affects the premises of petitioners ''. The city made answer containing various absolute or technical denials of certain portions of the petition and set up as a separate and distinct defense that the council had jurisdiction both to direct the construction of the lateral sewer in Edgewood Avenue and to levy an assessment therefor; that the levy of the assessment was not fraudulent; that no substantial error was committed; that only the alleged filed objections could be considered on this application, in conformity with section 232 of the charter of the city; that the objections filed did not specify total lack of jurisdiction, fraud or substantial error as required by Sections 231, 232 and 238 of the City Charter, and that the ordinance No. 44, February 11, 1948, '' is controlling '' and demanded that the petition be dismissed.

Although the city relies chiefly upon an alleged, plenary power in the common council to do about as it pleases in the assessment for cost of improvements and levy of tax therefor, it also urges strenuously the limitations on the right to review an assessment of tax for local improvement recited in section 231 of the charter, and the further limitations in section 232 which sets forth the procedure on review. These provisions are substantially those in sections 164 and 165 of the Second Class Cities Law just as the pertinent portions of section 43 of the charter (as amd. by L. 1943, ch. 710, part 3, tit. 32, § 511) which authorize and direct the assessment and charge of the cost of public improvements upon property benefited are substantially those of section 100 of the Second Class Cities Law. The provisions of the limiting section and the procedural section indicate that an assessment and levy may be set aside only for " total want of jurisdiction to levy and assess the same on the part of the officers, board or body authorized by law to make such levy or assessment or to order the improvement " for which it was made. They further provide that the assessment may be modified only if fraud or substantial error has been committed in the assessment and levy which inflicted substantial damages on the complainant. No modification of the levy and assessment here could be made, however, because the petitioners presented no evidence at any time upon which it could be determined how much, if any, less than made, the attempted levy and assessment upon their property should have been. However, if there was entire absence of jurisdiction, either in the council or the commissioner of assessment and taxation, or both, to levy or assess in the manner and form in which they have, the assessment or tax may be vacated.

The respondent preliminarily objects that the section 232 of the charter confines the review " to grounds in said objections specified and no other." It argues that the grounds stated in the notice of motion and petition are not those stated in the letter of objection filed on October 8, 1947. Although these were, perhaps, not artfully drawn, they did definitely raise the question of the power of the commissioner of assessment and taxation to prepare a tax roll different from that directed by the ordinance No. 57, September 11, 1946, and they definitely raised the question of the power of the council to confirm the assessment as made by ordinance No. 44, February 11, 1948. Respondent could have been in no doubt about, or without notice of, these objections. They did not contain any suggestion that the council itself was without jurisdiction to proceed as it had before February 11, 1948, and we are thus relieved from a consideration of that question.

The court must indicate, however, that the power in the council to assess and charge the cost of the improvement upon the property affected thereby is required by section 43 of the charter to be exercised " in the form and manner provided by law or ordinance." The respondent concedes that there is no statute providing any form and manner in which the expense should be assessed and charged upon the property affected; nor any local law or ordinance, other than Mount Vernon City Local Law No. 2 of 1926 requiring confirmation of an assessment, *which provides any regular procedure for the council to follow in the exercise of its undoubted power.* It is this court's opinion that the council acted without jurisdiction because it did not, and in fact could not, direct the assessment and charge of the expense of the improvement " in the form and manner provided by law or ordinance." The provisions of section 43 of the charter look to some procedure fixed and " provided by law or ordinance." The city admits that there is no law but would interpret the section as if the words " or ordinance " read " or special ordinance " and insists the ordinance required was supplied by ordinance No. 57, September 11, 1946, which authorized the construction and fixed and determined the property to be affected and benefited, or ordinance No. 31, July 23, 1947, which declared the improvement complete, reaffirmed the boundaries of the district of assessment already fixed by the first ordinance and directed the assessment and charge upon the property by the commissioner of assessment and taxation as provided in the first ordinance. The court, however, believes the ordinance described by section 43 of the charter is not a special ordinance for, and to authorize, a particular improvement but a general ordinance fixing a general procedure as would the " law " with which it is conjoined in the charter section. It is to be known by its associates and the city does not assert the " law " would be a special law for a particular improvement although it argues that its fellow " ordinance " is a special ordinance for a particular improvement. An ordinance prescribes some permanent rule of conduct or government, to continue in force until the ordinance is repealed, and is distinctively a legislative act (2 McQuillin, Municipal Corporations [2d ed.], § 663, p. 658). An ordinance prescribes a permanent rule of government or conduct and is a continuing regulation (*Matter of Collins* v. *City of Schenectady,* 256 App. Div. 389, 392). Mount Vernon Ordinance No. 57, September 11, 1946, was a special ordinance (2 McQuillin, Municipal Corporations [2d ed.], § 671). The ordinance required by section 43 of the charter is clearly a general ordi-

nance, a legislative act for permanent general regulation, or a local law in the nature of a by-law, like that required by the Lackawanna Charter and described in *Kij* v. *Aszkler* (163 Misc. 63, 64-65).

The question, however, does not arise in this proceeding, as has been said, because it was not raised in the objections, but even if it is assumed that the respondent is correct in its argument that ordinances No. 57, September 11, 1946, and No. 31, July 23, 1947, were singly or collectively the ordinance described in section 43 of the charter, the commissioner of assessment and taxation acted without jurisdiction for he wholly ignored and disregarded the commands of both ordinances. He did not in compliance with ordinance No. 57, September 11, 1946, apportion, assess and charge the expense according to law to the end that it might be confirmed and collected upon the property included within the boundaries set out in the ordinance and there deemed and determined to be the property benefited by the improvement and " established as the district of assessment therefor ". Nor did he give more heed to ordinance No. 31, July 23, 1947, for he deliberately omitted " to assess and charge the expense of such improvement upon the property lying within the District of Assessment for said improvement " as theretofore fixed by ordinance No. 57, September 11, 1946, or " in accordance with the provisions of the statute in such case made and provided " as he was directed to proceed by ordinance No. 31, July 23, 1947. He entered only one parcel of real property within the district on his assessment roll. He charged the expense on that property and made no apportionment at all. With no other property entered on his roll he could, of course, do little else. He had, in fact, himself attempted to establish a district of assessment different from that set up by the council in its ordinances and he wholly ignored its action and command. He acted wholly without jurisdiction. His action was not an irregular compliance with ordinances No. 57, September 11, 1946, and No. 31, July 23, 1947; it was action wholly outside the authorization they attempted to provide and, thus, wholly outside his jurisdiction. His affidavit in support of the answer says he discovered that, before the improvement was made, Lots 4 and 5, Block 2002, and Lot 10, Block 2004, had had sewer service on other streets for which they had respectively paid assessments of $228.82, $1,054.68 and $453.30 and that it is the policy of the City of Mount Vernon, through the " sound exercise of discretion " by the common council and commissioner of assessment and taxation, never to assess twice for sewer service to the same prop-

erty, so he prepared his roll to indicate that petitioners' property was the only property benefited within the " provisional area of assessment ". The ordinances did not use the word " provisional ", nor in any way qualify the establishment of the district of assessment, and the word " provisional " is an after-thought more suggestive of ingenuity than of candor. The commissioner is careful to say only that he " prepared an Assessment Roll * * * * indicating " that petitioners' property alone was benefited. He does not say he so determined or that he so determined on any recognized principles of law or equity. He is, however, mistaken about the roll. It does not show that the petitioners' property alone benefited. It does not show any apportionment or assessment at all. It merely charges all the expense to the petitioners and makes no reference to anything or any one else.

The powers, obligations and duties of the Mount Vernon commissioner of assessment and taxation are those conferred upon, imposed upon and appertaining to the office of assessors in towns (Mount Vernon City Charter, § 223). They act in similar circumstances under sections 236 and 237 of the Town Law and, by section 237 of the Town Law, the territory to be included by the assessors in the assessment roll is not fixed by the assessors but by the town board. Here, the council, in the unchallenged, special ordinances for the improvement, fixed and determined that territory and the commissioner had no power to change the area, or to omit any property from the assessment roll he prepared (*Matter of City of New York* [*Pugsley Ave.*] 218 N. Y. 234, 240; *Hassan* v. *City of Rochester,* 65 N. Y. 516). He had no authority to decrease (*Hassan* v. *City of Rochester,* 65 N. Y. 516, 519-520), or increase (*Matter of City of New York* [*225th St.*], 150 App. Div. 223, 225) the area of assessment. He was bound to assume that every separate parcel of property within the area derived some benefit, for the council had so determined and he could not modify their determination (*Ellwood* v. *City of Rochester,* 122 N. Y. 229, 236). How great that benefit was, he was charged with the duty of determining and fixing, but he could not determine that there was no benefit or omit some property entirely. He acted without jurisdiction when he intentionally omitted from the assessment roll a portion of the property designated by the council as benefited and within the district of assessment (*McKechnie Brewing Co.* v. *Trustees of Vil. of Canandaigua,* 15 App. Div. 139, 147; *Matter of Klock,* 30 App. Div. 24, 42). The ordinance directed the work to be done and the expense assessed in a particular manner and the commis-

sioner of assessment and taxation made the assessment in violation of the ordinance. His action was wholly without jurisdiction, illegal and void (*Matter of Turfler*, 44 Barb. 46, 49, 53; *Van Deventer* v. *Long Island City*, 139 N. Y. 133, 139; *Matter of New York Prot. Episcopal Public School*, 75 N. Y. 324). Nor may some of the cases cited above be distinguished because they dealt with, or spoke particularly about, charter sections and ordinances directing assessment upon " all " the lots and parcels or on " all " the owners and occupants within the area designated by the board or body authorizing the improvement, assessment and levy. Here, the council fixed and established the district of assessment which it deemed the property benefited. Had it deemed any property therein not benefited it would not have included that property in the district of assessment " hereby established ", for it expressly declared that " the property included within " the district of assessment was the property " hereby deemed to be benefited " by the improvement. Also, in the second ordinance the council directed the commissioner to assess and charge the expense of the improvement upon the " property lying within the District of Assessment for said improvement as " theretofore " fixed by ordinance of this Common Council ". The city's insistence that only the objections offered by petitioners at the hearing of October 8, 1947, can be urged here, has made it the law of this proceeding that these special ordinances of the council constituted the " ordinance " described in section 43 of the charter, and, accordingly, the assessor could proceed only " in the form and manner " they provided.

Respondent argues that it is " a ridiculous proposition to state that the Common Council could not pass the Ordinance of February 11th, 1948, for want of jurisdiction ". The courts have not always agreed with this view. In *Matter of Turfler* (44 Barb. 46, *supra*) an assessment was held illegal and void because the assessors went beyond the authorization in the ordinance directing the assessment and it was urged that although the assessment was illegal, a subsequent confirmation of it by the common council was a ratification of it by competent authority which cured the irregularity. The court rejected this saying at page 53, that the assessment in the first instance was illegal, because not made in conformity to the ordinance of the common council, and a confirmation of it could not cure the illegality.

In *Doughty* v. *Hope* (3 Denio 594, affd. 1 N. Y. 79, on the reasoning below) an assessment was held void because signed by only two of three assessors and it was there urged that

because the statute provided for certification of the assessment to the council by the assessors and ratification by the council to make it binding and conclusive upon those assessed, the defect was cured by the ratification and confirmation. The court said, however (p. 599), " it is only when an assessment has been first duly made, that the common council has the power of ratification. Void things are as no things; and there never was any assessment to be ratified. The common council cannot itself make the assessment; it can only cause the thing to be done by sworn assessors. The power of ratification carries with it the authority to set aside a regular assessment, when not made upon just principles. But it does not include an authority to legalize an irregular and void assessment. As there was nothing to be ratified, the act of ratification was itself a nullity."

Again, in *Hassan* v. *City of Rochester* (67 N. Y. 528, 537) the Court of Appeals said the provisions of the Rochester Charter which related to the confirmation of an assessment vested no authority in its council to confirm an assessment made in violation of an ordinance and where it was plainly apparent that the assessors had disregarded it. " Such a proceeding of the assessors is unavailing because they exceeded their powers, and its confirmation cannot infuse into it any element of strength and vitality or remedy the difficulty."

The court's decision is, therefore, that the acts of the council through ordinance No. 31, July 23, 1947, toward making the improvement an assessment and levying the tax, were, under the law of this proceeding and application only, within the council's jurisdiction, valid and effective; that the commissioner of assessment and taxation, however, acted wholly without jurisdiction and that his acts and the acts of the council, in attempted confirmation thereof, were wholly without jurisdiction, void and of no effect. Those acts will, accordingly, be so declared and vacated. Presumably, the assessor may proceed anew to comply with the ordinances directing him to assess the cost of the improvement upon the property within the district of assessment. His acts heretofore, in the opinion of the court, have in no way consumed or exhausted the powers given to him by the two ordinances because he has never acted under them, exercised the authority they conferred or fulfilled any of their provisions.

Submit order on notice.