427 P.2d 574

Roma K. ANDERSON, Mildred Blackmer and Clair B. Johnson, Plaintiffs-Appellants,

v.

BOISE CITY, a municipal corporation, Jay Amyx, its Mayor, Joseph Foster, its Clerk, and Stanley Skiles, its City Attorney, Defendants-Respondents.

No. 9898.

Supreme Court of Idaho.

May 5, 1967.

Ariel L. Crowley, Idaho City, for appellants.

C. Stanley Skiles, Boise, for respondents.

SPEAR, Justice.

Appellants, as plaintiffs, petitioned the trial court for a writ of mandate to compel respondents to process their petition and initiative ordinance which would permit a vote by the electorate in Boise City on the issue of its participation in the Urban Renewal Program adopted by the State Legislature in 1965. Appellants also sought to have The Idaho Urban Renewal Law of 1965, I.C. §§ 50–4701 to 50–4718, chap. 246, Idaho Session Laws of 1965, declared unconstitutional.

The proposed petition and initiative ordinance was submitted to the city council in conformance with, and under the authority of, Section 16 to 16A(32) of the

Boise City Charter, on the grounds that the right to initiate legislation prescribed therein had never been abridged. Respondents elected to take no action on the petition, contending that the initiative right provided for under the Boise City Charter was eradicated by the conversion of Boise from a special charter city to a city of the first class under the general municipal laws of the State of Idaho.

There were three basic issues presented to the trial court: (1) Did the election held by Boise City under the provisions of Chapter 227, Idaho Session Laws of 1961, for the purpose of organizing the City under the general municipal laws of the State of Idaho, comply with the requirements of Article 12, Section 1, of the Idaho Constitution; (2) if such requirements were met, are the initiative provisions of the Boise City Charter still in force; and (3) are plaintiffs (appellants herein) entitled to have a declaration as to the constitutionality of The Urban Renewal Law?

Concerning issue No. 3, the trial court concluded that the appellants had not shown themselves entitled to bring the proposed action for a declaratory judgment, because they had not proven that they, or any of them, had an interest peculiar to themselves and not merely such an interest as the public generally has in determining the constitutional validity of the law being questioned. From this determination appellants did not appeal, so that issue is not before this court.

The assignments of error present two principal issues. Appellants allege that the court below erred in (1) upholding the validity of the election held by Boise City in 1961, under which it was ruled that the City changed its status from that of a special charter city to one governed under the municipal laws of the State for cities of the first class; and (2) in finding that where the government of the City was validly changed the provisions for initiative legislation in the city charter did not continue in force. Concerning the first issue, appellants contend that the 1961 election

held by Boise for the purpose of organizing the City under the state general municipal laws was invalid because "a *majority of the electors in the City*" did not vote for the change as, they maintain, is required under the provisions of Article 12, Section 1 of the Idaho Constitution; and consequently the City is still governed by the charter, including the provisions for initiative and referendum contained therein.

Chapter 227, Idaho Session Laws of 1961 (now Title 50, Chapter 48, Idaho Code) provided a procedure by which any city organized under a special charter might become organized as a city of an applicable class, depending upon its population under the general municipal laws of the state. The statutory provisions required, among other things, that the proposition be submitted to an election. They further provided that if the majority of the votes cast were in favor of organizing under the general municipal laws of the State, the result should be certified to the Governor, and upon a public proclamation of the fact by the Governor, the City should thereafter become a city of the applicable class.

Exhibits A and B, introduced in the trial court, are certificates of the Mayor of Boise stating that such an election was held in Boise and that 3,693 electors voted in favor of the proposition and 151 electors voted against the proposition. Exhibit C is a proclamation by the Governor declaring Boise City "to be a City of the First Class defined and governed by Title 50, Idaho Code, and the general laws of the State of Idaho."

Appellants contend that the constitutional provisions (Article 12, Section 1, Idaho Constitution) providing for change in form of governmental organization by a "majority of the electors at a general election" means a majority of the electors in the City, not merely a majority of electors voting on the proposed change in that particular election. This section of the Constitution provides as follows:

"The legislature shall provide by general laws for the incorporation, organiza-

tion and classification of the cities and towns, in proportion to the population, which laws may be altered, amended, or repealed by the general laws. Cities and towns heretofore incorporated, may become organized under such general laws, whenever a majority of the electors at a general election, shall so determine, under such provisions therefor as may be made by the legislature."

We do not agree with appellants' construction of this constitutional provision. The provision by its terms does not refer to a majority of the electors "of the City" but rather uses the language "a majority of the electors at a general election." To construe this phrase as appellants urge would be to interpolate the words "of the City" after the word "electors." There is no justification for making such an interpolation.

Additionally, the case of Green v. State Board of Canvassers, 5 Idaho 130, 47 P. 259, is strong authority against the construction urged by appellants. In that case this court was required to construe a comparable provision in Article 20, Section 1 of the Idaho Constitution, relating to the submission of constitutional amendments to the electors. This section provides:

"* * * and if a majority of the electors shall ratify the same, such amendment or amendments shall become a part of this Constitution."

The construction urged upon the court in the Green case was that a majority of the electors voting at a general election had to vote for a proposed amendment to adopt it rather than merely a majority of those electors voting on the specific question of the passage of the constitutional amendment. The record in that case shows that 12,126 electors voted for a proposed constitutional amendment and 6,282 voted against it, while 10,000 or more electors voting on other matters in the election did not vote on the question of the constitutional amendment. The opinion reveals that no one even suggested that this constitutional provision required a majority of the electors of the State to vote in favor of

the proposed amendment before it could be adopted.

The court held that a majority of those voting on the question of the proposed amendment constituted a "majority of the electors" within the meaning of that provision in Article 20, Section 1, of the Constitution. Chief Justice Morgan, writing a concurring opinion, referred specifically to the article in question in the present case, i. e., Article 12, Section 1, as being illustrative of a constitutional provision which, on the other hand, clearly required a majority of the votes cast at the election. In so doing he made these pertinent observations:

"The provisions of our own constitution, and of others similar thereto, with reference to the votes necessary to carry any proposition, may be properly divided into three classes:

"First, Those which require a majority or two-thirds of all the votes cast at a general or special election. * * * Also of the same class is section 1 of article 12, which provides 'that cities and towns may become organized whenever a majority of the electors at a general election shall so determine.' * * * The language of these sections is clear and unmistakable. It needs no construction, and it is only necessary to count the ballots cast at any such election and those voting for the proposition, to ascertain if a majority of all those voting at said election were in favor of the proposition."

Since in the case at hand the record affirmatively shows without contradiction that a majority of electors voting on the proposition of organizing Boise City under the general municipal laws voted in favor of the proposition, we conclude such organization was validly adopted.

We must, and do, hold against appellants on the first issue raised.

Concerning the second issue raised by appellants in this appeal, now that we have determined that the City of Boise validly changed that status from a special charter city to a city of the first class organized un-

der the general municipal laws of the State of Idaho, we need to consider the question whether the initiative provisions of the Boise City Charter are nevertheless still in force, thus authorizing the process which appellant sought to enforce by this action.

The 1961 session of the state legislature enacted two statutes, both of which were designed to change the status of Boise from a chartered city to a city of the first class under the municipal laws.[1] The election held by Boise in which a majority of those voting on the proposition voted to change the government to a city of the first class was conducted under and in accord with Article 12, Section 1 of the Idaho Constitution and the enabling statute enacted in accord therewith, being Chapter 227 of the 1961 Session Laws (Title 50, Chap. 48, Idaho Code). Said Chapter 227 was enacted on March 11th and by virtue of an emergency clause (Section 11) attached thereto, became effective immediately upon passage of the bill (Senate Bill 129). The statute in Sections 2 and 3, Chapter 227, provides for the submission to the people of a proposition for the organization of a city under the general municipal laws of the state and an election by the people thereon as specifically required by the constitution.

The 1961 Session of the Idaho State Legislature also enacted Chapter 51 which specifically repealed the Boise City Charter. Section 1 of Chapter 51 provides:

"Subject to the provisions of this act, the special charter of Boise City, being an act entitled 'An Act to incorporate Boise City, in Ada County', approved January 11, 1866; and amendatory acts thereto, be, and the same is hereby, repealed."

That Act bears an approval date of February 23, 1961. The position of appellants is that the repealing section (Section 1 of this Act) is unconstitutional because it by-passes the requirement of Article 12, Section 1, of the Idaho Constitution which requires that a proposed change of the form of government be submitted to the electorate for their approval. This statute has never been repealed, but respondents admit this section of the act repealing the Boise City Charter is probably unconstitutional.

Under the provisions of Chapter 51, that statutory enactment was to become effective September 1, 1961. Chapter 227 was passed on March 11, 1961 and contained, as noted, an emergency clause making the act effective as of that date. Pursuant to Chapter 227 Boise City held an election on August 22, 1961 in which a majority voted in favor of the proposition providing for a reorganization of the city under the general municipal laws of the state. On September 1, 1961, the Governor executed and issued a proclamation declaring that:

"Boise City, a municipal corporation situate in Ada County, Idaho, to be a city of the first class defined and governed by Title 50, Idaho Code, and the general laws of the State of Idaho."

Appellants contend that, while the repealing provision of Chapter 51 is manifestly unconstitutional, this does not mean that the entire act is void, and conclude that the remaining provisions of Chapter 51 (the repealing statute) must be construed together with the empowering statute on conversion (Chapter 227) under which the election was held, i. e., in *pari materia* as one act from which the repealing section is readily deleted.

Appellants rely on the following rules of statutory construction in support of the above proposition:

(a) Two statutes enacted at the same session of the legislature and dealing with the

---

1. The City of Boise was originally incorporated by a special act of the Third Territorial Legislature by the enactment of a special charter incorporating Boise City. Boise elected under statutory authorization in 1911 to be governed by the general municipal state laws, and then in 1927 under statutory authority, elected to take back the charter. The city then continued to operate under the charter until 1961.

same subject matter are to be read as one statute, unless they are in irreconcilable conflict.—Here, Chapter 51 and Chapter 227 were enacted 16 days apart, and deal precisely with the same subject matter;

(b) Legislative intention may be determined by reference to an unconstitutional enactment of the same legislature;

(c) Two statutes enacted at the same session and dealing with the same subject matter must not only be read together, but, when in conflict, that one which deals with the particular matter in a more detailed manner will prevail;

(d) If the initiative right provided by charter is repealed by conversion to first class city status, it must be by implication which will not be indulged in if there is any other reasonable construction;

and for such rules cite the following authorities: In re Gem State Academy Bakery, 70 Idaho 531, 224 P.2d 529; Byrd v. Employment Security Agency, 86 Idaho 469, 388 P.2d 100; State ex rel. Graham v. Enking, 59 Idaho 321, 82 P.2d 649; Messenger v. Burns, 86 Idaho 26, 382 P.2d 913; State v. Casselman, 69 Idaho 237, 205 P.2d 1131; State v. Taylor, 58 Idaho 656, 78 P.2d 125; State v. Roderick, 85 Idaho 80, 375 P.2d 1005; Lloyd Corporation v. Bannock County, 53 Idaho 478, 25 P.2d 217; State v. Martinez, 43 Idaho 180, 250 P. 239; and John Hancock Mut. Life Ins. Co. v. Haworth, 68 Idaho 185, 191 P.2d 359.

Appellants argue that in construing both statutes, i. e., Chapter 51 and Chapter 227, in *pari materia* it is the clear intention of the legislature to retain the charter provisions for initiative and referendum even though Boise discarded the charter form of government. The particular provisions of these chapters which appellants claim express this intention are first—Section 2, Chapter 51, which reads in part:

"That Boise City, * * * is hereby declared to be a city of the First Class and from and after the effective date of this act shall be subject to and shall be governed by the provisions of Title 50, Idaho Code, relating to cities of the first class in the State of Idaho, and shall be subject to all duties, obligations, liabilities and limitations, and shall exercise all powers, functions, rights and privileges now or hereafter granted or imposed upon municipalities of the first class in the State of Idaho; *provided that this act shall not in any manner or degree affect any existing rights, liabilities, contracts, or ordinances of said city, but shall merely extend to such change in form of government; * * *.*"* (emphasis supplied)

and secondly, Section 9, Chapter 227, which provides in part:

"Any city or village organized under the provisions of this act shall for all purposes be deemed and taken to be in law the identical corporation theretofore incorporated and existing under the special charter or general incorporating act; and such reorganization shall in no wise affect or impair the title to any property owned or held by such corporation or in trust therefor, or any debts, demands, liabilities or obligations existing in favor of or against such corporation, or any proceeding then pending, nor shall the same operate to repeal *or affect in any manner any ordinance theretofore passed or adopted and remaining unrepealed,* or to discharge any persons from any liability, civil, criminal then existing, for any violations of any such ordinance; but such ordinances, so far as the same are not in conflict with the general laws, shall be and remain in force until repealed or amended by the said city council * * *.*"* (emphasis supplied)

Appellants contend that while Chapter 227 contains similar, but perhaps more general preservative words, Chapter 51 is more particular and more clearly evidences the intention of the legislature to preserve for the City the referendum and initiative provisions in the City Charter and therefore the latter chapter should be given first and more weighty consideration.

The next argument advanced by appellants in support of their contention of preservation of the initiative and referendum rights is based upon certain provisions of Title 50 of the Idaho Code. In particular I.C. §§ 50–109, 50–124, and 50–902 are relied upon, as these were incorporated by reference in both statutory enactments of the 1961 Legislature. Thus, for example, Chapter 227, Section 1 provides that "Any city within the State of Idaho organized under a general incorporating act or special charter may become organized as a city of the first or second class or as a village * * * under the provisions of Title 50, Idaho Code, and the general laws of the State of Idaho by proceedings as hereinafter provided." Appellants further argue that the designated statutory provisions of Title 50 further evidence the intention of the legislature to preserve preexisting rights such as, specifically, the charter provisions for initiative and referendum of municipalities that do choose to reorganize under the general municipal law.

For instance appellants specifically rely upon I.C. § 50–109 which in part provides that:

"All by-laws, ordinances and resolutions, lawfully passed and in force in any city under its former organization, shall remain in full force until altered or repealed by the mayor and council under the provisions of this chapter."

Appellants maintain there is a clear legislative construction of the words "by-laws, ordinances and resolutions," when applied to a chartered city and that such words include special charter provisions such as those providing for the initiative and referendum and consequently these provisions were preserved under the authority of section 50–109 of the city's conversion. Appellants reason as follows:

The Eleventh Idaho State Legislature enacted in 1911 a statute, Chapter 82, 1911 Session Laws, providing for a "commission" form of government. See Chapter 36, Title 50, Idaho Code. Section 3 of that Act,

known as the "Black Law," provides in part that:

"* * * no provisions of any special charter or other special act or law which any such city may be operating under at the time of its becoming organized under this act, shall thereafter be applicable to such city while it is operating under the provisions of this act."

This provision is now continued and found in the commission government act embodied in Chapter 36, Title 50, Idaho Code, specifically I.C. § 50–3607.

The same provision, appellants point out, does not, however, appear in the first class cities chapter (Title 50, Chapter 1, Idaho Code), but in lieu thereof there appears the direct opposite, i. e., Section 50–109. The position advanced by appellants is that the legislature, by excluding continuity (therefore of charter provisions) in adoption of the commission form of government only, evidenced its intention to otherwise generally preserve special charter provisions, and that the legislature meant to include such charter provisions by its use of the words "by-laws, ordinances and resolutions" in I.C. § 50–109.

However Title 50, Chapter 36, dealing with the organization of the commission form of government is expressly made applicable to cities existing and governed under special charters as well as any city organized under the general municipal laws of the state. Chapter 82, Section 1, 1911 Session Laws; I.C. § 50–3601. On the other hand Title 50, Chapter 1, Idaho Code (Chapter 74, Sections 1 et seq., 1913 Session Laws), is legislation concerned only with cities or villages that have been under the general municipal laws, and deals with the transfer of villages or second class cities to cities of the first class upon attaining a population of more than 15,000 inhabitants. The proper inference to be drawn therefrom is that, as concerns Chapter 82, 1911 Session Laws, it was necessary for the legislature to provide specifically for the discontinuance of existing charter provisions, while this was not true in the latter

**534**

circumstances, where the legislature was concerned *only* with provisions governing municipalities already operating under state municipal laws.

Appellants failed to present the argument, however, that, unlike Chapter 82, 1911 Session Laws, Chapters 51 and 227, 1961 Session Laws did not specifically provide for the discontinuance of special charter provisions upon reorganization of a city under the state general municipal laws. Here a valid comparison might have been drawn since the involved statutory enactments provided for the conversion of a special charter city to one governed by the municipal laws.

[3] However, if one reads Chapter 51 and Chapter 227 together it may be concluded that the legislature intended that the charter provisions be discontinued on the basis of Chapter 51, Section 1, which repeals the charter outright. Appellants contend for the rule of construction that legislative intention may be determined by reference to an unconstitutional enactment of the same legislature. Application of that rule of construction here requires holding against the contention advanced by appellants.

■ The position of appellants that the legislature intended by the wording "all by-laws, ordinances and resolutions" (found in I.C. § 50–109; Chapter 74, Section 9) to include provisions of special city charters is untenable in view of established Idaho law. In the context of municipal law there is a clear distinction between acts passed by the state legislature and municipal ordinances. See Title 50, Chapter 20, Idaho Code. The Boise City Charter and its amendments were special acts of the legislature and not municipal ordinances. Therefore the reference to ordinances remaining in force in I.C. § 50–109 has reference to the municipal ordinances enacted by the mayor and council and not to the charter itself, it being a legislative act

. The same is true of the provision for preservation of ordinances found in Chapter 227, Section 9, Idaho Session Laws 1961; I.C. § 50–4809 and Chapter 51, Section 2, Idaho Session Laws 1961. Other language relied upon in the above provisions to the effect that existing rights, liabilities, etc., are preserved, read in context, apply to contract rights and obligations, and not charter provisions.

This court in dealing with cases involving cities incorporated under special charters, moreover, has consistently treated such special charters and the general municipal laws to be mutually exclusive. For example, the court has consistently held that such special charters can be amended only by a special act of the legislature and not by general municipal laws, and that the provisions of such special charters "supersede and prevail over any inconsistent provisions contained in the general law pertaining to matters of local concern." See Bagley v. Gilbert, 63 Idaho 494, 122 P.2d 227, and cases cited therein. Those cases admittedly deal with a situation which is converse to that presented here, i. c., where there was an attempt to apply general laws dealing with matters of local concern to cities operating under a special charter. The trial judge perceptively pointed out, however, that under the law of these cases, Boise would indeed be a *unique municipal corporation subject to some strange paradoxes* if it were held to be governed by provisions of the charter as well as the general municipal laws. In his memorandum decision he stated:

"On the one hand, it would be subject to charter provisions which could be amended only by a special act of the legislature and which supersede and prevail over the general municipal laws; and at the same time it would also be subject to those same general municipal laws as they now exist and might be amended in the future, which general laws could not alter the charter provisions. Furthermore, it would seem to create an anomalous situation if after the majority of the

electors voting at the election had voted in favor of relinquishing the charter and organizing under the general municipal laws it were also held that they were still governed by provisions of the charter."

Appellants also refer to, and rely upon, I.C. § 50–902. This provision was adopted as part of the general municipal law enacted in 1893 providing for the organization, government and power of cities and villages. Idaho Session Laws, 1893, Section 58, p. 97. § 50–902, Idaho Code, reads as follows:

"All rights and privileges which have accrued to any city, town or village held by any officer of such corporation, under or by virtue of any act of the legislature of the territory or state of Idaho, or any act of congress of the United States, before taking effect of this chapter, are hereby preserved to such cities, towns or villages, and all its said trusts, rights and privileges shall be transmitted to and be vested in such latter corporation, and all actions heretofore commenced by or against any city or town which shall be or become a city or village under the provisions of this chapter, shall be in no manner affected by this chapter, but all such actions shall be continued to final judgment and satisfaction as if this title had not been passed."

Again, this act does not provide for cities changing from organization under special charters to organization under the general municipal laws. Consequently, under no circumstances could the reference to continuation of rights and privileges refer to the continuation of charter provisions after a city has become organized under the general municipal laws. Moreover, the rights and privileges preserved under the enactment would seem to refer to contract and other rights, and not charter provisions.

Additionally, the section of the 1893 enactment (Section 58, Idaho Session Laws 1893) by its express terms and by judicial construction applies only to rights accruing prior to the adoption of that act. City of Twin Falls v. Koehler, 63 Idaho 562, 123 P.2d 715. The initiative provisions in the Boise City Charter relied upon by appellants were added to the charter by amendments in 1927 (Chapter 1, pp. 56–59, Idaho Local and Special Laws of 1927) and 1947 (Chapter 226, Section 2, Idaho Session Laws of 1947) and therefore did not accrue prior to the adoption of the act in 1893.

The last argument which appellants present in support of their position that the charter provisions of Boise relating to initiative and referendum continued in force though the city validly was organized in 1961 under the general municipal laws of the state, is based upon the general rule cited from 62 C.J.S. Municipal Corporations § 97b, p. 226, that

"The adoption by an existing municipality of the provisions of a general law is generally held to repeal and supersede such provisions, and only such provisions, of a former special charter as are inconsistent with, or repugnant to, the provisions of the general law."

See also Park v. City of Duluth, 134 Minn. 296, 159 N.W. 627 (1916); Simmons v. City of St. Louis, 264 S.W.2d 928 (Mo.App. 1954).

In answer thereto, first, though this may be the law in other states, the law in Idaho is otherwise. Under the Idaho decisions special charter provisions and general municipal laws have been treated as mutually exclusive. See discussions, supra.

Secondly, the basis of appellants' whole argument is that the municipal laws now governing the City are not inconsistent with the preservation of the provisions of the former city charter providing for initiative and referendum. This however is not true. Idaho Code, § 50–147, provides for the initiative and referendum power for cities of the first class governed under the general municipal laws in the following language:

"To provide by general ordinance * * for direct legislation by the people

through the initiative and referendum; and, when petitioned by a number of qualified electors equal to twenty-five per cent of the votes cast for mayor, as shown by the last city election, it shall be the duty of the council to submit to the people at a special election, called therefor, the question as to whether or not such ordinance shall be passed; and if a majority of the people at such special election vote in favor therof, then the city council must prepare and pass such ordinance."

Boise has never enacted such an ordinance. The foregoing statute is mandatory and until complied with, the City has no provisions for initiative and referendum.

It is our conclusion the trial judge did not err in holding the initiative provisions of the Boise City Charter no longer in force.

Judgment affirmed. Costs to respondents.

TAYLOR, C. J., and SMITH, McQUADE and McFADDEN, JJ., concur.