Breitel, J.
In a proceeding by a village to declare a partially destroyed building a nuisance and to order its removal, intervener, executor of the estate of the mortgagee in possession, appeals. The issue is whether section 89 (subd. 7-a) of the Village Law providing for removal of unsafe buildings is self-executing without a general ordinance having been enacted to implement its provisions. If so, the further issue is the power of the village to remove or compel removal of a particular building by resolution, passed without the formality of an ordinance.
There should be an affirmance. Section 89 (subd. 7-a) of the Village Law is self-executing, and the procedure |)y village board resolution suffices. Despite some contrary opinions rendered by the State Comptroller’s office, and some ambivalent legislative history, general principles and practical considerations *300 justify the view taken by the village and the courts below that an implementing ordinance is not required or useful.
The Village of Upper Nyack petitioned in Supreme Court, under the Village Law (§ 89, subd. 7-a), for a determination that the building was unsafe and for its removal. The building is 9. former nightclub and restaurant, partially destroyed by fire in 1963 and then abandoned by the owner. The first mortgagee’s executor has since been in possession, paying tbe taxes and advancing moneys to maintain the improvement. The executor moved to intervene and dismiss the village’s petition for lack of an ordinance implementing the Village Law provision, regarded as merely an enabling statute.
On March 20, 1969, the village, purportedly pursuant to subdivision 7-a, adopted a resolution appointing a Mr. Drake to inspect the building. On July 17,1969, he reported that the building was unsafe. On this report, the village resolved that the owners be notified and notice posted on the premises to the effect that the building should be secured or removed by August 25, 1969. Notice was served on the executor by registered mail on July 24,1969. About a week after the deadline, on September 2, 1969, Mr. Drake again inspected the building and found it in the same unsafe condition. On September 18,1969, the village passed another resolution providing for a survey of the premises, and authorizing the village attorney to take legal action. On September 23,1969, notice was given to the parties of their right to name a practical builder, engineer, or architect to participate in the survey, and warning that legal action would be taken. The executor named an architect and an engineer to participate in the survey. On November 10, 1969, the two men named by the executor, and Mr. Drake and Mr. McLeod for the village, conducted a survey. The executor’s men did not submit reports. On January 12, 1970, the executor was informed that the report of the survey would be made without his experts unless their reports were submitted by January 16,1970. Although time to file their reports was extended, they were not submitted. On March 9, 1970, Mr. Drake and Mr. McLeod submitted their reports for the village finding the building unsafe. On the same day the village filed its petition.
*301 Section 89 of the Village Law, introduced by the words “ The board of trustees of a village ’ ’, contains subdivision 7-a which provides:
“ 7-a. Unsafe buildings and collapsed structures. May provide for the removal or repair of buildings in business, industrial and residential sections that, from any cause, may now be or shall hereafter become dangerous or unsafe to the public; as follows :
‘ ‘ a. For an inspection and report by an official duly appointed by the board of trustees;
“ b. For a notice to be served on the owner or some one of the owner’s executors, legal representatives, agents, lessees or any other person having a vested or contingent interest in same, either personally or by registered mail, addressed to the last known address, if any, of the owner or some one of the owner’s executors, legal representatives, agents, lessees or other person having a vested or contingent interest in same, as shown by the records of the receiver of taxes and/or in the office of the county clerk or county register, containing a description of the premises, a statement of the particulars in which the building or structure is unsafe or dangerous and an order requiring same to be made safe and secure or removed; and if such service be made by registered mail, for a copy of such notice to be posted on the premises;
‘ ‘ c. For a time within which the person served with such notice shall commence and complete the securing or removal of buildings or structures;
“ d. For survey of premises in event of neglect or refusal of person served with notice to comply with same, said survey to be made by an official of the village and a practical builder, engineer or architect to be named by the board of trustees and a practical builder, engineer or architect appointed by a person notified as above and in event of refusal or neglect of person so notified to appoint such surveyor the two surveyors named shall make the survey and report. The notice shall state that in the event the building or other structure shall be reported unsafe or dangerous under such survey, that an application will be made at a special term of the supreme court in the judicial district in which the property is located not less than five nor more than ten days thereafter for an order determining the building or *302 other structure to be a public nuisance and directing that it shall be repaired and secured or taken down and removed ;
“ e. For posting a signed copy of the report of survey on the . building and for compensation of surveyors;
‘ ‘ f. For the assessment of all costs and expense incurred by the village in connection with the proceedings to remove or secure, including the cost of actually removing said building or structure, against the land on which said buildings or structures are located.”
The village followed the statutory procedure. It made an official inspection. It notified interested parties by registered mail and by posting that the building was unsafe. It set a deadline for securing or removing the building. It served notice of a survey, inviting interested parties to appoint experts to participate. It also served notice that if the survey reported the building unsafe, an application would be made at Special Term for its removal. After the executor’s experts defaulted, the village experts reported the building unsafe. The village made the appropriate application to Special Term.
The executor contends that although the “ May provide” terminology of subdivision 7-a grants the village power to remove a nuisance, it must first enact an implementing ordinance. The executor relies on opinions of the State Comptroller’s office which have consistently found subdivision 7-a to be not self-executing (e.g., 14 Op. St. Comp. 31; 19 Op. St. Comp. 302; 23 Op. St. Comp. 779; 25 Op. St. Comp. 212; 26 Op. St. Comp. 73). In each opinion but one the Comptroller expressly states that an ordinance is required.
In one of the opinions of the State Comptroller’s office it was commented: “ A similar provision appears in Town Law Sec. 130 (16). The Town Law provision, which was enacted in 1935 and which is the model for the Village Law provision, definitely contemplates the enactment of an ordinance. Further, some villages had enacted ordinances prior to the enactment of § 89 (7-a). It was because of doubt as to the legality of such ordinances that § 89 (7-a) was enacted to give express authorization for the enactment of such ordinances.” (19 Op. St. Comp., supra, at p. 303.) But what is significant and omitted in the opinion is that the Town Law omnibus statute of powers of town boards contained an introductory paragraph requiring a public *303 hearing procedure before the powers could be exercised (§ 130). The Village Law omnibus statute of powers contains no such introductory paragraph (§89).
In a 1967 opinion, the one exception to his prior rulings, the Comptroller says that an ordinance or a resolution is required (23 Op. St. Comp. 779, supra). The opinion goes on to state, however, ‘ ‘ that, unless an ordinance or other official pronouncement is enacted with the requisite formalities of a public hearing, publication and proper posting, the public will never know whether the municipality has elected to avail itself of the authority embodied in such a permissive statutory provision” (id.).
If the formalities last discussed are observed the action of the village has the force of an ordinance even if it were denominated a resolution (5 McQuillin, Municipal Corporations [1969 rev. ed.], § 15.02, at pp. 46-47; 62 C. J. S., Municipal Corporations, § 160, at p. 323; cf. Matter of Collins v. City of Schenectady, 256 App. Div. 389, 392; Drake v. Hudson Riv. R. R. Co., 7 Barb. 508, 538-540). The Village Law permits ordinances to be enacted only after notice and a public hearing. The actions of the village in this instance were resolutions both in name and in form. The lack of precedent for the use of resolutions to implement subdivision 7-a, and the contrary advisory opinions of the State Comptroller were the basis for this court granting leave to appeal.
Generally, where a statutory grant of power is complete within itself, providing standards, procedures, and penalties, the statute is self-executing, and no other legislation is required (2 McQuillin, Municipal Corporations [1966 rev. ed.], § 10.30; Kleiber v. City of San Francisco, 18 Cal. 2d 718, 724). Subdivision 7-a provides a two-step, administrative procedure for determining a building to be unsafe, a method for notifying interested persons, a requirement of judicial review, and the power to assess expenses on the property. The statute gives adequate notice of the steps the village may take to eliminate nuisances. It is unlike statutes granting merely power ‘‘ to prevent and remove all nuisances” (see, e.g., Lake v. City of Aberdeen, 57 Miss. 260, 263; American Furniture Co. v. Town of Batesville, 139 Ind. 77).
The statute, as noted earlier, is also unlike section 130 of the Town Law which expressly requires a public hearing and appears *304 to contemplate an ordinance to implement the nuisance removal power, otherwise described in language almost identical with the Village Law (Town Law, § 130, subd. 16). The Town Law provision was enacted seven years before the Village Law provision, and, because of the similarity in language, undoubtedly served as a model (Town Law provision enacted, L. 1935, ch. 464, amd. L. 1944, chs. 67,126; Village Law provision enacted, L. 1942, ch. 453, amd. L. 1944, ch. 779 and L. 1956, ch. 125). No explanation has been found, however, for deleting the requirement of a public hearing.
The opinion of the State Comptroller’s office also states that the Village Law provision was enacted to .validate ordinances previously enacted by some villages. If a village were relying on general police powers for the power to- remove nuisances, and at that time there wejre no other authorization, a village would have acted necessarily by an ordinance rather than a resolution. The enactment of the Village Law provision made clear, what had previously been in doubt, that the village had a nuisance removal power. In this sense, the enactment validated the previous ordinances. Since a village may always do-by ordinance what may be done by a less formal resolution, the alleged purpose of the enactment to validate these ordinances does not logically indicate that an ordinance rather than a resolution is now required (see infra).
True, the statute says that the village ‘ ‘ May provide for the removal or repair of buildings * * * that * * * become dangerous or unsafe to the public ”. But, the use of the permissive words “ May provide ” in this context do not necessarily imply that further legislation is required. The permissive form suggests, arguably, that a village is not required to act against every building which becomes a nuisance. The analogous section of the Administrative Code of the City of New York, but containing the mandatory word ‘' shall ’ ’, provides: ‘ ‘ Any structure * * * that * * * may at any time become dangerous- * * * shall be taken down and removed or made safe and secure ” (§ C26-80.0). As a coiisequence, perhaps, of the terminology and other provisions of the code, the Appellate Division held, in an action by an infant injured when a dangerous structure had collapsed, that the city had a mandatory duty to abate the nuisance. The infant’s complaint was sustained, and *305 the infant ultimately recovered (Runkel v. City of New York, 282 App.. Div. 173, 177; see Runkel v. Homelsky, 286 App. Div. 1101, affd. 3 N Y 2d 857).
Where, as in this case, there is no general provision requiring all powers to be implemented by ordinance, but some parts of the statute expressly require an ordinance, then there is an implication that other powers may be implemented without an ordinance (5 McQuillin, Municipal Corporations, § 15.06, supra, at pp. 57-58). When one looks at other powers granted by section 89 of the Village Law, some may be exercised by written resolution (subd. 20), some by resolution subject to a referendum (subd. 28), some after a public hearing (subd. 24), and some by ordinance (e.g., subd. 36). The different applications illustrate the principle stated above, and suggest that no ordinance is required to implement the nuisance removal power. .
Thus, the village should not be required to do anything to indicate that it might someday utilize the power to eliminate nuisances. At least no purpose, public or private, would be served by the added requirements, given a statute as detailed as this one is, with safeguards, judicial and otherwise, provided. It should be emphasized that before the building may be removed, the village must apply at Special Term “ for an order determining the building or other structure to be a public nuisance and directing that it shall be repaired and secured or taken down and removed” (Village Law, § 89, subd. 7-a, par. d). In this instance, the Legislature has chosen to protect property owners from arbitrary determinations by local officials by requiring a judicial determination, rather than a public hearing or a referendum.
The village, of course, had to use some procedure in applying the statute to the particular building. It chose to proceed at each step by resolution rather than by ordinance.
An ordinance is distinguished from a resolution by the greater formality required for its enactment (Village Law, § 90; 5 McQuillin, Muncipal Corporations, § 15.02, supra). An ordinance provides a permanent rule of government or conduct designed to affect matters arising subsequent to its adoption (Matter of Edgewood Ave. in City of Mount Vernon, 195 Misc. 314, 323-324, affd. 275 App. Div. 853; Town of Poestenkill v. Sicho, 54 Misc 2d 191, 194; Russell Sage Coll. v. City of Troy, *306 24 Misc 2d 344, 345-347; Kij v. Aszkler, 163 Misc. 63, 64; 5 McQuillin, Municipal Corporations, § 15.02, esp. at p. 43, and § 15.06, esp. at p. 57, supra). A resolution deals with matters of a temporary or special nature, where the action taken generally involves findings of fact and -may be characterized as administrative (Matter of Collins v. City of Schenectady, 25 App. Div. 389, 392, supra; 1 Antieau, Municipal Corporation Law, 1 4.05; Kleiber v. City of San Francisco, 18 Cal. 2d 718, 724, supra; Allen v. Wise, 204 Ga. 415, 417).
Where general legislation enacted either in the form of a statute or a general ordinance is in effect, then a municipal corporation may act in particular instances by resolution. In the Russell Sage College case (24 Misc 2d 344, supra) the court held that where a Troy city ordinance prohibited erection of slaughterhouses without permission of common council, the council could grant permission by resolution (24 Misc 2d, at p. 345; accord, City of Albany v. Newhof, 230 App. Div. 687, 688-689, affd. 256 N. Y. 661). In the Kij case (163 Misc. 63, supra) the City of Lackawanna attempted to sell property without enacting an ordinance required by statute “prescribing the general method of sale ” (163 Misc., at p. 65). The court implied that if this “ preliminary legislative act ” were enacted, then the city might make individual sales by resolution (id.). A municipal corporation may by resolution exempt a housing project from taxes, construct a city administration building, establish a nursery to supply parks with trees and shrubs, or build a bridge (see Kleiber v. City of San Francisco, 18 Cal. 2d 718, supra; Rule v. City of Stamford, 121 Conn. 447; People ex rel. Sweitzer v. City of Chicago, 363 Ill. 409, 416-417; and Case v. City of Saginaw, 291 Mich. 130,150-151, respectively). In each instance, as in this case, a resolution applied general powers to a particular exemption or building project. By analogy, a resolution should be sufficient to remove a particular nuisance.
The village has followed to the letter the procedure specified in subdivision 7-a. The executor has had actual notice of each step in that procedure. He has had an opportunity to repair the building and to appoint experts to aid in determining whether the building is a nuisance. The village determination that the building was a nuisance was not final. Indeed, the village finding was merely a prerequisite under the statute for initiation pf *307 court proceedings. It was for the court to determine anew that a nuisance existdd, and to prescribe the remedy. Under the circumstances, those with rights to the property have been fully protected. The executor’s contention that an ordinance is required before court proceedings may be.initiated is technical at best, and even at a technical level, itfails. .
Accordingly, the order of the Appellate Division should be affirmed, without costs.
Chief-Judge Fold and Judges Burn®, Scileppi, Bergan, Jasen and Gibson concur.
Order affirmed,