**MUNICIPALITY OF ANCHORAGE, Appellant,**

v.

**Mary R. FROHNE, Appellee.**

**Mary R. FROHNE, Cross-Appellant,**

v.

**George SULLIVAN, Mayor, Municipal Assembly, Anchorage Municipality Commission on Salary and Emoluments, Cross-Appellee.**

**Nos. 3050, 3104.**

Supreme Court of Alaska.

Aug. 26, 1977.

Ted D. Berns, Asst. Municipal Atty. and Richard Garnett III, Municipal Atty., Anchorage, for appellant and cross-appellee.

Timothy H. Stearns, Anchorage, for appellee and cross-appellant.

## OPINION

Before BOOCHEVER, C. J., and RABINOWITZ, CONNOR and BURKE, JJ.

RABINOWITZ, Justice.

This appeal and cross-appeal arise from two final orders of the superior court. The first permanently enjoined appellant from "disbursing funds from the treasury of the Municipality of Anchorage except in accordance with appropriations authorized by ordinance." The second ordered that an initiative petition which was circulated by cross-appellant and certified as legally sufficient by the clerk of the Greater Anchorage Area Borough should not be submitted to the voters of the Municipality of Anchorage, and granted summary judgment to cross-appellees. We reverse the superior court as to its first order concerning the method of municipal appropriations required, and affirm with respect to the superior court's grant of summary judgment on the initiative.

Appellee Mary Frohne was a member of the Anchorage Municipal Charter Commission, an eleven member organization responsible for drafting the Anchorage Municipal Charter. The Greater Anchorage

Area Borough and the City of Anchorage unified to become the Municipality of Anchorage upon adoption of the charter on September 9, 1975.[1] Frohne subsequently brought suit alleging various violations of the provisions of the new charter. We will first address the substantive issues concerning the authorized methods of appropriation by the Municipality.

 The facts are undisputed in this case. Prior to unification, the City and Borough followed different procedures in authorizing budget revisions, transfers and supplemental appropriations. The Borough was subject to AS 29.48.130 and 29.48.190(c) which prohibit second class and general law municipalities from authorizing expenditures except by appropriation ordinance. The former City of Anchorage, as a home rule municipality, was not subject to these statutory restrictions on expenditures[2] and followed a general practice of processing budget revisions, transfers, appropriations, and supplemental appropriations by council action memoranda. Pursuant to the terms of the Anchorage Municipal Charter,[3] the mayor noted a conflict between the methods of appropriation utilized by the former Borough and City governments. The proce-

dure "designated" by the mayor and approved by the assembly for future appropriations by the Municipality of Anchorage was the informal action memorandum used by the city before unification. Until the imposition of the injunction which is the subject of this appeal,[4] the Municipality was utilizing both ordinances and memoranda for budget revisions, appropriations and supplemental appropriations.

As a preliminary matter, we note that the Alaska Constitution imposes no explicit restrictions on the methods of appropriation available to home rule municipalities.[5] Since the general statutory provisions requiring municipal appropriation ordinances are also inapplicable to home rule governments,[6] disposition of this first issue turns on the construction given to the provisions of the municipal charter.[7]

The charter itself is devoid of any express requirement that appropriations be made by ordinance. Appropriation is defined in the charter as "a unit of funding provided for by the Assembly in the municipal budget."[8] We deem it significant that the subject of appropriations is omitted from a charter listing of "actions requiring an ordinance."[9] Although by its own terms this

---

1. Anchorage Municipal Charter § 19.02(a). The charter was adopted by a majority vote in accordance with the requirements of AS 29.68.-390.

2. AS 29.13.100 applies to home rule municipalities only designated provisions of that chapter. AS 29.48.130, which requires municipalities to perform certain actions by ordinance—including the making of appropriations—is not one of the provisions designated in AS 29.13.100.

3. Anchorage Municipal Charter § 19.06.
 *Conflict in Prior Law.* In the event of conflict between the ordinances, resolutions, and regulations of the former governments, affecting the orderly transition of government, the Mayor shall designate in writing which governs. The designation is effective immediately and shall be communicated to the Assembly. The designation is approved unless the Assembly, within twenty-one (21) days, adopts by resolution a contrary designation.

4. A preliminary injunction was issued on June 24, 1976. After oral argument on appellant's motion for a stay or in the alternative for an

order dissolving the preliminary injunction, the superior court denied appellant's motion and granted a permanent injunction based on the terms, conditions, and reasons stated in the court's memorandum and order of June 24, 1976.

5. This is in contrast to funds withdrawn from the state treasury, which must be "in accordance with appropriations made by law." Alaska Const. art. IX, § 13. Statutory language implementing this constitutional provision establishes a budgetary system in which all appropriations are made by legislative act. AS 37.07.030,.080,.100.

6. *See* n.2 *supra* and n.7 *infra.*

7. The constitution grants to home rule governments "all legislative powers not prohibited by law or by charter." Alaska Const. art. X, § 11.

8. Anchorage Municipal Charter art. XVII, § 17.-13(a).

9. *Id.* art. X, § 10.02.

list is not exhaustive,[10] the text of the charter explicitly indicates throughout where other actions are to be carried out "by ordinance." [11]

When a charter is silent as to the mode of decision on a matter committed to the legislative body, ordinance procedures are not ordinarily required.[12] This is particularly true where, as in the present case, specific parts of a charter mandate ordinance procedures. The clear implication is that other powers may then be exercised without proceeding by ordinance.[13]

With one exception, the Anchorage Municipal Charter consistently refers to the making of appropriations and omits the limitation "by ordinance." In the section on initiative and referendum, however, reference is made to "ordinances . . . appropriating funds." [14] The stated purpose of this provision is to limit the exercise of the powers of initiative and referendum.[15] We do not believe that, standing alone, this section pertaining to initiative and referendum can be used as a basis for imposing a procedure for appropriations not contemplated by the charter as a whole.[16] In our view it evidences an intent to withdraw from the voters the power to directly intervene in appropriations which, like the annual municipal budget,[17] are passed by ordinance. We cannot read this provision to imply an intent on the part of the drafters of the charter that in addition all appropriations must be by ordinance when such a restriction could have been explicitly included in the charter.[18] We therefore reverse the judgment of the superior court on this issue with directions upon remand to dismiss the permanent injunction which required the Municipality of Anchorage to make appropriations exclusively by ordinance.

The initiative which is the subject of the instant cross-appeal would have directed the Greater Anchorage Area Borough Assembly to select one of three multiple member district apportionment plans and one of two single member district apportionment plans proposed in the initiative and "give the voters their opportunity to choose between the two by including them in one ordinance and placing them on the same ballot in a special election, to take place within 60 days of enactment of this initiative." The petition was circulated and certified [19] by the municipal clerk on July 25, 1975. Since it was not acted upon by

10. Charter § 10.02 provides for assembly actions "[i]n addition to other actions which require an ordinance . . . ."

11. For example, the assembly "by ordinance" is to determine its own rules and order of business, adopt an administrative code, provide for community councils, and establish procedures for municipal elections. *Id.* §§ 4.04(c), 5.06, 8.01, 11.02.

12. 5 E. McQuillin, *The Law of Municipal Corporations* § 15.06, at 56 (3d ed. 1969); *Board of Education v. De Kay,* 148 U.S. 591, 13 S.Ct. 706, 37 L.Ed. 573 (1893); *Meredith v. Connolly,* 68 Misc.2d 956, 328 N.Y.S.2d 719 (App.Div. 1972) *aff'd,* 38 A.D.2d 385, 330 N.Y.S.2d 188 (1972); *Fraser v. Teanack Twp.,* 1 N.J. 503, 64 A.2d 345 (1949); *see* 15 E. McQuillin, *supra* § 39.66, at 188.

13. 5 E. McQuillin, *The Law of Municipal Corporations,* § 15.06, at 57–58 (3d ed. 1969); *Barrington v. Cokinos,* 339 S.W.2d 330 (Tex.Civ. App.1959). *Cf. r.w.d. Jewett et al. v. Luau-Nyack Corp.,* 31 N.Y.2d 298, 338 N.Y.S.2d 874, 291 N.E.2d 123 (1972) (construing statutory language).

14. Anchorage Municipal Charter § 3.02.

15. The Alaska Constitution withdraws from the people the right to initiative and referendum with respect to appropriations. Alaska Const. art. XI.

16. Anchorage Municipal Charter art. XVII, § 17.11(b) cautions against this type of misapplication of charter requirements: "References in this Charter to particular powers, duties and procedures of municipal officers and agencies may not be construed as implied limitations on other municipal activities not prohibited by law."

17. *Id.* art. XIII, § 13.03–05.

18. A requirement of appropriation ordinance could be included in § 10.02 of the charter, or inserted at the points in the charter where appropriations are discussed. *Id.* § 5.05, 6.05(c), 13.05, 13.06, 13.07, 13.08, 19.12(b).

19. A petition is certified by the municipal clerk pursuant to AS 29.28.073.

the Borough Assembly, the initiative was scheduled for presentation to the voters at the next regular municipal election in October 1976.[20] However, because of the intervening special election on September 9, 1975, in which the municipal charter was adopted and the Borough and City consequently unified under one municipal government, Frohne was informed that the Municipality did not consider the initiative petition binding on it, and that it would not be placed on the 1976 ballot.

In ruling upon cross-appellant Frohne's motion for partial summary judgment, the superior court found no genuine issues of material fact and awarded summary judgment to the Municipality of Anchorage. Specifically, the court held that an initiative filed with the former Greater Anchorage Area Borough could not be used to amend the Anchorage Municipal Charter or bind the Municipality when the Municipality did not exist at the time the petition was filed, that section 19.08[21] of the Anchorage Municipal Charter does not bind the Munici-

pality to accept the initiative petition, that insofar as it relates to the Municipality the initiative is vague and confusing, and that the initiative petition does not conform to the requirements of section 18.03[22] of the charter with respect to charter amendments. We will not address all of cross-appellant's arguments for placing the initiative before the people of the Municipality of Anchorage at a regular municipal election[23] in light of our conclusion that the initiative presented to the Borough cannot bind the subsequently created municipality and that, in any case, the initiative cannot be deemed an amendment to the charter without complying with procedural requirements for the adoption of charter amendments.

The Anchorage Municipal Charter, prepared by the charter commission and adopted by the voters, contained an apportionment plan for the new Anchorage Municipal Assembly.[24] The initiative petition was concededly circulated "in contemplation" of adoption of the charter[25] and cross-appel-

20. The procedure is set forth in AS 29.28.080.
 *Presentation of initiative*
 (a) When a petition seeks enactment of an ordinance or resolution within the powers of the assembly or council . . . the clerk shall present it to the assembly or council at its next meeting after certification. The assembly or council may reject the petition if the subject matter of the initiative or referendum is within the restrictions of § 60 of this chapter.
 (b) Unless the petition is granted within 30 days of its submission to the assembly or council, the clerk shall, with the assistance of the municipal attorney, prepare an ordinance or resolution to implement the petition and shall submit it to the voters at the next regular election. The ordinance or resolution shall be published in full in the notice of election but may be summarized on the ballot to indicate clearly the proposal submitted.
 (c) If a majority of those voting favor the proposal, it becomes effective when the election results are officially declared.
 (d) The assembly or council may at any time not less than 10 days from the date of election adopt an ordinance or resolution to implement the petition. In that event an election shall not be held.

21. Section 19.08 of the Anchorage Municipal Charter provides:
 *Existing Rights and Liabilities Preserved*
 (a) Except as otherwise provided in this Charter, all rights, titles, actions, suits, fran-

chises, contracts, and liabilities and all civil, criminal or administrative proceedings shall continue unaffected by the ratification of this Charter. The new government shall be the legal successor to the former governments for this purpose.

22. *Id.* § 18.03 *Ballot Form.*
 When an amendment to this Charter is proposed for adoption by the voters, the ballot proposition shall indicate the current wording proposed to be changed, if any, as well as the proposed new wording, if any.

23. In addition to disputing the findings of the superior court, cross-appellant urges that principles of law and equity favor the initiative, since (1) the charter, in section 4.01, specifically contemplates the possibility of modification of district apportionment plans; (2) the voters have a continuing right to choose between different types of apportionment plans; and (3) bringing another petition would be a wasteful duplication of prior efforts.

24. Detailed procedures for preparation and submission of home rule charters are prescribed by AS 29.68.240–.440. AS 29.68.350 requires the charter to provide for apportionment.

25. The Anchorage Municipal Charter contained a multiple member district apportionment plan. Anchorage Municipal Charter art. XIX, § 19.-

lant Frohne now seeks to bind the Municipality to its terms. In matters of initiative and referendum, we have previously recognized that the people are exercising a power reserved to them by the constitution and the laws of the state,[26] and that the constitutional and statutory provisions under which they proceed should be liberally construed. *Boucher v. Engstrom*, 528 P.2d 456, 462 (Alaska, 1974).[27] To that end "all doubts as to technical deficiencies or failure to comply with the exact letter of procedure will be resolved in favor of the accomplishment of that purpose." *Boucher v. Engstrom, supra*, quoting *Cope v. Toronto*, 8 Utah 2d 255, 332 P.2d 977, 979 (1958) (footnote omitted).[28] Nevertheless, the subject of the initiative must constitute such legislation as the legislative body to which it is directed has the power to enact. *Farley v. Healey*, 67 Cal.2d 325, 62 Cal.Rptr. 26, 431 P.2d 650 (1967); *Blotter v. Farrell, supra, Gibbs v. City of Napa*, 59 Cal.App.3d 148, 130 Cal.Rptr. 382 (1976). The legislative body to which the present initiative was directed was the Greater Anchorage Area Borough Assembly. The Borough Assembly, however, had no power, through a prior legislative act, to bind a municipal government not yet in existence. Similarly, the people through the initiative process cannot accomplish that result.

The present initiative, by its own terms, would restrict the Borough Assembly to presenting the voters with a choice of district apportionment plans from among the five selected by the initiative. It does not in any way affect the process of preparation, submission and adoption of the charter. The detailed statutory procedures prescribed for unification of local governments continue to apply to the determination of the method of district representation in the same manner as they apply to the other provisions of the charter.[29] Thus, if this initiative is given full effect it would render the statutory directives for charter formulation in this area nugatory. Furthermore, it would open the way for grave interferences with the entire process of charter adoption. The statute regarding unification of local governments provides for public hearings both before and after drafting of the proposed charter by the charter commission.[30] If a small minority of the voters[31] could in addition interject themselves into the implementation of specific charter provisions by circulating petitions for initiative embodying alternative proposals, a charter legally adopted by the majority of the voters of a municipality could be held in abeyance indefinitely. The power of initiative cannot be used to frustrate the

02(c). Opinion polls which prompted circulation of the petition, however, indicated that the majority of the voters in the area preferred single member districts. The initiative petitioned both the Greater Anchorage Area Borough and the Charter Commission to present voters with a choice between single and multiple member district plans.

**26.** Alaska Const. art. XI, § 1 provides:
The people may propose and enact laws by the initiative, and approve or reject acts of the legislature by the referendum.
AS 29.28.060 declares:
The powers of initiative and referendum are reserved to the residents of municipalities except the powers do not extend to matters restricted by § 7, art. XI, of the state constitution.
Where relevant, art. XI, § 7 states:
The initiative shall not be used to dedicate revenues, make or repeal appropriations, create courts, define the jurisdiction of courts or prescribe their rules, or enact local or special legislation.

**27.** Accord, *Blotter v. Farrell*, 42 Cal.2d 804, 270 P.2d 481, 484 (1954); *State ex rel. Voss v. Davis*, 418 S.W.2d 163 (Mo.1967).

**28.** See *Associated Home Builders of the Greater Eastbay, Inc. v. City of Livermore*, 18 Cal.3d 582, 135 Cal.Rptr. 41, 557 P.2d 473 (1976) (not applying notice and hearing requirements of zoning law to zoning initiatives).

**29.** The legislature has provided for an elected charter commission which is to hold open, public meetings in which a charter is to be prepared and public hearings on the proposed charter, followed by a public election. AS 29.68.-280–.390.

**30.** AS 29.68.360.

**31.** A petition for initiative must be signed by at least ten per cent (10%) of the qualified voters who cast ballots in the last regular mayoral election. Anchorage Municipal Charter art. III, § 13.03–05.

formation of a new local government in such a manner.

 Frohne argues nevertheless that the right to have the initiative presented to the voters "vested" at the time the petition was certified as sufficient by the Borough clerk, and that under section 19.08 of the charter,[32] the right was preserved. Thus, cross-appellant would have us view the contents of the initiative as a proposed amendment to the municipal charter,[33] even though it was not expressly addressed to the Municipal Assembly.[34] We cannot agree to this construction of section 19.-08(a), which merely establishes the Municipality as the legal successor to the Borough and City governments in all "rights, titles, actions, suits, franchises, contracts, and liabilities . . . "[35] The charter does not bind the Municipality to a form of government selected by an initiative petition which was certified as sufficient prior to its existence. Section 19.08 refers rather to contract and other obligations incurred by the former governments prior to unification.[36]

Therefore this superior court's grant of summary judgment for cross-appellees in this issue is affirmed.

Affirmed in part, Reversed in part.

---

**32.** Anchorage Municipal Charter art. XIX, § 19.08(a) is set out at note 21, *supra*.

**33.** Cross-appellants insist that the initiative does not constitute a charter amendment until it is passed and the choice of district plans is presented to the voters. However, in selecting five specific apportionment plans the initiative actually commences the amendment process, and there is no reason for separating it from the subsequently narrowed choices presented to the voters.

**34.** The petition was directed to the Greater Anchorage Area Borough Assembly and the Charter Commission.

**35.** *See* n.21, *supra*.

**36.** *See Anderson v. Boise City*, 91 Idaho 527, 427 P.2d 574 (1967) where the court held that language in a statute relating to the continuation of rights and privileges did not apply to charter provisions for initiative after the city had become organized under general municipal laws.