JBGR, LLC, et al., Respondents, v CHICAGO TITLE INSURANCE COMPANY, Appellant. [11 NYS3d 83]—

In an action to recover damages for breach of a title insurance policy, the defendant appeals from (1) an order of the Supreme Court, Suffolk County (Emerson, J.), dated January 17, 2013, which denied that branch of its motion which was pursuant to CPLR 3211 (a) to dismiss the complaint, and (2) so much of an order of the same court dated October 1, 2013, as denied that branch of its motion which was, in effect, for leave to renew that branch of its prior motion which was pursuant to CPLR 3211 (a) to dismiss the complaint.

Ordered that the order dated January 17, 2013, is affirmed; and it is further,

Ordered that the order dated October 1, 2013, is affirmed insofar as appealed from; and it is further,

Ordered that one bill of costs is awarded to the plaintiffs appearing separately and filing separate briefs.

In 1994, Paul Elliott and a business partner purchased 286 acres of land in order to develop a residential community around an 18-hole golf course. On or about December 24, 1997,

Elliott signed a declaration and covenant (hereinafter the 1997 declaration) which, inter alia, provided "[t]hat in the event that a golf course is developed as approved, the residential development of the property shall be limited to no more than 140 lots or units." The 1997 declaration was recorded on September 20, 1999. Elliott sold his interest in the project to Thomas F. Costello, doing business as Great Rock Golf, Inc. (hereinafter GRG), in 1999.

By 2005, a golf course had been approved and developed, and 140 residential units had been built. That same year, Costello informed Elliott that he was having financial difficulties, and asked whether Elliott would be interested in repurchasing the property from GRG or could help in obtaining an additional partner to raise capital for the project. Elliott advised Costello that six limited liability companies (hereinafter collectively the plaintiffs), including one in which Elliott was the principal, were interested in purchasing or investing in the project. On April 12, 2006, the plaintiffs, who intended to construct 55 additional residences, but allegedly were unaware of the 1997 declaration, gave GRG a note in the principal amount of $2.97 million, secured by a second mortgage on the subject property. Elliott and the principals of the five other limited liability companies also executed a personal guaranty for the purchase of the property, and a contract of sale was executed. Contemporaneously, the plaintiffs obtained title insurance from the defendant, thereby insuring the plaintiffs against loss or damage sustained by reason of any defect, lien, or encumbrance on the title to the property. Pursuant to exclusion 3 (a), however, the title insurance policy excluded any defect, lien, or encumbrance "created, suffered, assumed or agreed to by the insured claimant." The title report did not disclose the existence of the 1997 declaration.

The plaintiffs allegedly did not learn about the 1997 declaration until 2009. Despite several extensions of the maturity date, the obligation set forth in the note—which had been assigned from GRG to Costello and others (hereinafter collectively the Costello parties)—was not paid and, in 2011, the Costello parties commenced an action against the plaintiffs herein, among others (*see Costello v JBGR, LLC*, Sup Ct, Suffolk County, index No. 28474/11 [hereinafter the Costello action]). The plaintiffs thereafter commenced this action against the defendant, the title insurance company, alleging that, because the 1997 declaration represented a defect, lien, or encumbrance on the title that the title search failed to reveal, the title insurance company was obligated to indemnify them

against the actual monetary damages that they sustained. The defendant unsuccessfully moved, inter alia, to dismiss the complaint pursuant to CPLR 3211 (a).

Initially, the Supreme Court had the discretion to consider the defendant's argument that the doctrine of collateral estoppel barred this action (see CPLR 3211 [a] [5]), notwithstanding that it was raised for the first time in its reply papers, and the court properly considered and addressed the merits of that argument (see Wells Fargo Bank, N.A. v Marchione, 69 AD3d 204 [2009]; Matter of Kennelly v Mobius Realty Holdings LLC, 33 AD3d 380 [2006]). As to the merits, contrary to the defendant's contention, the Supreme Court properly determined that the instant action is not barred by the doctrine of collateral estoppel. "The doctrine of collateral estoppel bars relitigation of an issue which has necessarily been decided in a prior action and is determinative of the issues disputed in the present action, provided that there was a full and fair opportunity to contest the decision now alleged to be controlling. The party seeking the benefit of the doctrine of collateral estoppel must establish that the identical issue was necessarily decided in the prior action and is determinative in the present action. Once the party invoking the doctrine discharges his or her burden in that regard, the party to be estopped bears the burden of demonstrating the absence of a full and fair opportunity to contest the prior determination" (Capellupo v Nassau Health Care Corp., 97 AD3d 619, 621-622 [2012] [citations omitted]; see Mahler v Campagna, 60 AD3d 1009, 1011 [2009]).

Here, the defendant failed to establish that the dispositive issues in this case were necessarily decided against the plaintiffs in the Costello action. In support of its motion, the defendant submitted an affidavit from Elliott, which had been submitted in opposition to a motion for summary judgment on the complaint in the Costello action. In that affidavit, Elliott admitted that his signature appeared on the 1997 declaration. Elliott also asserted that, before he or any of the principals of the other plaintiffs signed a contract to purchase the property, he informed Costello that the plaintiffs intended to further develop the property by constructing 55 additional residences. Elliott further asserted that he specifically inquired as to whether any restrictions had been filed in connection with the property, and that Costello assured him that there were no impediments to such construction. The defendant also submitted an order of the Supreme Court dated July 23, 2012 (hereinafter the July 2012 order), awarding the Costello parties summary judgment on the complaint in the Costello action for the

amount of the unpaid note. In the July 2012 order, the court stated that "[t]he defendants' conclusory and unsubstantiated allegations that they were unaware of the declaration which restricted further development of the premises to the existing 140 homes which were already built is unavailing in light of the fact that defendant Elliott conceded in his affidavit that he executed same on December 24, 1997." Contrary to the defendant's contention, however, the July 2012 order does not bar this action pursuant to the doctrine of collateral estoppel, as the only issue that was necessarily decided by that order was that the defendants in the Costello action—including the plaintiffs in this action—were liable to the Costello parties on the unpaid note.

Furthermore, "the knowledge of [an] agent can be charged to the principal only when clear proof is made that the knowledge was present in the agent's mind at the time of the transaction which is the subject of consideration by the court" (*Slattery v Schwannecke*, 118 NY 543, 548 [1890]). To the extent that the July 2012 order implied that Elliott was acting as the plaintiffs' agent in the 2006 transaction at issue here, the defendant failed to present clear proof that Elliott had the 1997 declaration in his mind at the time of the 2006 transaction so as to impute his knowledge of the 1997 declaration to the plaintiffs for purposes of establishing that policy exclusion 3 (a) provided a defense to this action (*see Skiff-Murray v Murray*, 17 AD3d 807 [2005]).

In addition, the Supreme Court properly concluded that the complaint stated a cause of action to recover damages for breach of the title insurance policy (*see* CPLR 3211 [a] [7]).

The Supreme Court also properly determined that CPLR 3211 (a) (1) did not provide a basis on which the complaint should be dismissed. "A motion to dismiss pursuant to CPLR 3211 (a) (1) will be granted only if the 'documentary evidence resolves all factual issues as a matter of law, and conclusively disposes of the plaintiff's claim'" (*Fontanetta v John Doe 1*, 73 AD3d 78, 83 [2010], quoting *Fortis Fin. Servs. v Fimat Futures USA*, 290 AD3d 383, 383 [2002]; *see Leon v Martinez*, 84 NY2d 83, 88 [1994]). "Neither affidavits, deposition testimony, nor letters are considered documentary evidence within the intendment of CPLR 3211 (a) (1)" (*J.A. Lee Elec., Inc. v City of New York*, 119 AD3d 652, 653 [2014] [internal quotation marks omitted]). The defendant proffered emails, correspondence, and affidavits in support of its contention that, pursuant to section 5 of the title insurance policy, the plaintiffs' failure to provide requested information regarding their claim terminated its

obligation to cover the defects in the title. Therefore, the defendant failed to present any documentary evidence establishing a defense to the complaint.

Accordingly, the Supreme Court properly denied that branch of the defendant's motion which was pursuant to CPLR 3211 (a) to dismiss the complaint.

Finally, the Supreme Court properly denied that branch of the defendant's motion which was, in effect, for leave to renew that branch of its motion which was pursuant to CPLR 3211 (a) to dismiss the complaint as barred by the doctrine of collateral estoppel. "A motion for leave to renew 'shall be based upon new facts not offered on the prior motion that would change the prior determination' and 'shall contain reasonable justification for the failure to present such facts on the prior motion'" (*JRP Holding, Inc. v Pratt*, 113 AD3d 823, 824 [2014], quoting CPLR 2221 [e] [2], [3]). "The requirement that a motion for renewal be based on new facts is a flexible one, and it is within the court's discretion to grant renewal upon facts known to the moving party at the time of the original motion 'if the movant offers a reasonable excuse for the failure to present those facts on the prior motion'" (*Gonzalez v Vigo Constr. Corp.*, 69 AD3d 565, 566 [2010], quoting *Matter of Surdo v Levittown Pub. School Dist.*, 41 AD3d 486, 486 [2007]).

In support of its motion for leave to renew, the defendant proffered the motion papers that had been submitted in connection with the Costello parties' motion for summary judgment in the Costello action, as well as the verified answer in that action. It did so in an effort to establish that the defendants therein, i.e., the plaintiffs in the instant action, had a full and fair opportunity to litigate the issues of whether Elliott was acting as the agent for the plaintiffs herein, and whether his knowledge of the 1997 declaration should be imputed to them. The defendant failed to provide a reasonable excuse for why these documents were not submitted in support of its initial motion in this action. Dillon, J.P., Dickerson, Hall and LaSalle, JJ., concur.