JBGR LLC, ELLIOT WR GOLF LLC, INSURE NEW YORK AGENCY LLC, HURNEY WR GOLF LLC, DEMPSEY WR GOLF LLC, AND WALSH WR GOLF LLC, Plaintiffs,

against
Chicago Title Insurance Company, Defendant.


35140-11

MARC J. BERN & PARTNERS LLP
Former Attorneys for Plaintiffs JBGR LLC, Insure New York Agency LLC, Hurney WR Golf LLC, Dempsey WR Golf LLC and Walsh WR Golf LLC
60 East End 42nd Street, Suite 950
New York, New York 10165
WICKHAM, BRESSLER & GEASA, P.C.
Attorneys for Plaintiff Elliot WR Golf LLC
13015 Main Road, P.O. Box 1424
Mattituck, New York 11952 
FIDELITY NATIONAL LAW GROUP
Attorneys for Defendant Chicago Title Insurance
350 Fifth Avenue
New York, New York 10118


Elizabeth Hazlitt Emerson, J.

Upon the following papers read on these motionsand cross-motion for summary judgment; Notice of Motion and supporting papers 152-202; 220-272 ; Notice of Cross Motion and supporting papers 279-313 ; Answering Affidavits and supporting papers 314-354; 355-356; 361-381; 386-397 ; Replying Affidavits and supporting papers398-409; 414-415; 421 ; it is,
ORDERED that the motion by the defendant, Chicago Title Insurance Company, for summary judgment dismissing the complaint is granted; and it is further
ORDERED that the cross motion by the plaintiff Elliot WR Golf LLC for summary judgment and sanctions is denied; and it is further
ORDERED that the motion by the plaintiffs JBGR LLC, Insure New York Agency LLC, Hurney WR Golf LLC, Dempsey WR Golf LLC, and Walsh WR Golf LLC for summary judgment is denied.
In 1994, Paul Elliot, an experienced real estate investor and developer, was a shareholder of 1994 Soundview Golf, Inc. ("Soundview"), which purchased 286 acres in Wading River, New York (the "Property"). Soundview planned to build a residential community around an 18-hole golf course on the Property. By 1999, development of the golf course had been started; the roads and infrastructure were substantially complete, and 140 building lots had been sold. Elliot then sold his interest in the project to Thomas Costello, who continued to work on the development d/b/a Great Rock Golf, Inc. By 2005, 140 homes had been built, and Elliot entered into negotiations with Costello to repurchase the Property. On January 19, 2006, Great Rock Golf, Inc., entered into a contract of sale with Great Rock Golf 2006 LLC, of which Elliot was the managing member. On April 12, 2006, Great Rock Golf 2006 LLC assigned its right to purchase the Property for $9.97 million to the plaintiff LLCs. Elliot is a member of the plaintiff Elliot WR Golf LLC. As part of the purchase price, the plaintiffs gave Great Rock Golf, Inc., a promissory note in the principal amount of $2.97 million secured by a second mortgage on the Property and guaranteed by the individual members of the plaintiff LLCs. The plaintiffs intended to build another 55 residences on the Property, but they learned in 2009 that development had been limited to 140 homes pursuant to a declaration signed by Elliot and recorded on December 24, 1997. Also in 2009, Great Rock Golf, Inc., assigned the note and mortgage to its shareholders, including Costello. When the plaintiffs and the individual guarantors defaulted, Costello and the other shareholders of Great Rock Golf, Inc., commenced an action in this court (Index No. 28474-11) to recover on the note and guarantees. By an order dated July 23, 2012, the court granted their motion for summary judgment and awarded them damages in the principal amount of $2.97 million.
The plaintiffs in this action were defendants in the aforementioned action. They commenced this action against the defendant, Chicago Title Insurance Company, who issued a title insurance policy in connection with the sale of the Property from Great Rock Golf, Inc., to them in 2006 (the "Policy"). The plaintiffs alleged that they were unaware of the 1997 declaration that restricted development of the Property to 140 homes (the "Declaration") and that they detrimentally relied on the defendant's title search, which failed to advise them of the Declaration. The plaintiffs alleged that the defendant is obligated to indemnify them for their losses because the Policy failed to exclude the Declaration from its coverage. The defendant's motion to dismiss the complaint was denied by an order of this court dated January 17, 2013. [*2]By a subsequent order of this court dated October 1, 2013, the defendant's motion to renew and reargue its motion to dismiss was also denied. Both orders were affirmed by the Appellate Division (128 AD3d 900). Discovery is now complete, and the case has been certified ready for trial. All parties move for summary judgment. 
In support of summary judgment, the defendant contends, inter alia, that the Declaration is not covered by the Policy because it is not a defect in title or lien or encumbrance on title. The defendant contends that the Declaration is a governmental restriction on the plaintiffs' use of the property, which is not covered by the Policy and is specifically excluded from coverage under Exclusion 1(a). The plaintiffs contend in opposition and in support of their motion and cross motion for summary judgment, inter alia, that the Declaration is an encumbrance on the property that runs with the land and, as such, is a title defect covered by the Policy. It is undisputed that the Declaration is not listed as a exception to coverage in Schedule B of the Policy.
The Policy provides, in pertinent part, as follows:
"SUBJECT TO THE EXCLUSIONS FROM COVERAGE, THE EXCEPTIONS FROM COVERAGE CONTAINED IN SCHEDULE B AND THE CONDITIONS AND STIPULATIONS, CHICAGO TITLE INSURANCE COMPANY . . . insures, as of Date of Policy shown in Schedule A, against loss or damage, not exceeding the Amount of Insurance stated in Schedule A, sustained or incurred by the insured by reason of:
1. Title to the estate or interest described in Schedule A being vested other than as stated therein;
2. Any defect in or lien or encumbrance on the title;
3. Unmarketability of the title;
4. Lack of a right of access to and from the land."
The Policy defines "unmarketability of title" as "an alleged or apparent matter affecting the title to the land, not excluded or excepted from coverage, which would entitle a purchaser of the estate or interest described in Schedule A to be released from the obligation to purchase by virtue of a contractual condition requiring the delivery of marketable title."
The Policy expressly excludes from coverage:
"1. (a) Any law, ordinance or governmental regulation (including but not limited to building and zoning laws, ordinances, or regulations) restricting, regulating, prohibiting or relating to (i) the occupancy, use, or enjoyment of the land; (ii) the character, dimensions or location of any improvement now or hereafter erected on the land; (iii) a separation in ownership or a change in the dimensions or area of the land or any parcel of which the land is or was a part; or (iv) environmental protection, or the effect of any violation of these laws ordinances or governmental regulations, except to the extent that a notice of the enforcement thereof or a notice of a defect, lien or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy."
A policy of title insurance protects a property owner against loss by reason of defective titles and encumbrances and insures the correctness of searches for all instruments, liens, or charges affecting title to such property (Logan v Barretto, 251 AD2d 552). Zoning regulation is not an encumbrance on title to property, nor does it render title unmarketable (Wolf v [*3]Commonwealth Land Title Ins. Co., 180 Misc 2d 307, 308). A marketable title is a title free from reasonable doubt, but not from every doubt (Voorheesville Rod & gun Cluv v E.W. Tompkins Co., 82 NY2d 564, 571). It is title that will enable a purchaser to hold his land free from probable claim by another and title that, if he wishes to sell, would be reasonably free from any doubt that would interfere with its market value (Id.). Marketability of title is concerned with impairments on title to a property, i.e., the right to unencumbered ownership and possession, not with legal public regulation of the use of the property (Id.). Zoning regulates the manner in which the property can be used and is not an encumbrance on the title (Id.; Wolf v Commonwealth Land Title Ins. Co., supra; see also Logan v Barretto, supra [notices issued by County Department of Health are not encumbrances on the title and do not render title unmarketable]; Homeside Dev. Corp. v Dassa Brill LLC, 27 AD3d 258 [deed restriction that property be used for community, rather than residential or commercial purposes, did not constitute an encumbrance upon the marketability of title to the property]). 
The record reflects that the 140-home restriction in the Declaration was clearly the result of Soundview's efforts to obtain zoning approval for the construction of a golf course on the Property. The Property was initially zoned Residence A, and a 218-lot residential subdivision had been approved for construction thereon. In 1994, Soundview petitioned the Town of Riverhead to change the zoning to add a recreational-use classification to the Property. Soundview's petition proposed reducing the number of building lots to 140 in order to construct a 135-acre golf course on the Property. On November 15, 1994, a public hearing was held on the petition. At the hearing, Soundview's attorney explained that his client's proposal was "to drop eighty some residential lots from the approved subdivision and construct thereon a golf course," thereby lessening the number of houses from 218 to 140. On April 4, 1995, the Town of Riverhead adopted Resolution No. 236, which approved Soundview's change-of-zone petition. The Resolution provided, in pertinent part, "That in the event that a golf course is developed as proposed, a covenant be filed limiting the residential development of the property to no more than 140 lots or units [.]"
In passing Resolution No. 236, the Town of Riverhead was exercising its power to regulate zoning matters. While the Resolution is not a law or ordinance, it is a governmental regulation. A municipality may act in particular instances by resolution when general legislation enacted either in the form of a statute or a general ordinance is in effect (Jewett v Luau-Nyack Corp., 31 NY2d 298, 306). For example, a municipality may by resolution exempt a housing project from taxes, construct a city administration building, establish a nursery to supply parks with trees and shrubs, or build a bridge (Id.). In each instance the resolution applied general powers to a particular exemption or building project (Id.). Here, Resolution No. 236 applied the Riverhead Town Code to the Property to create a recreational-use zone. As Soundview's attorney explained to the Town Board:
"What the Board has before it this evening is an application pursuant to the recreational use zone of the Riverhead Town code. The recreational use zone provides in part that where a parcel such as this is in proximity to one of the Town parks, that an application can be made for an overlay which means that the zoning would be imposed upon the existing residential zoning to allow certain recreational type uses to be made in conjunction with the residential zoning of the property."
On December 24, 1997, the Declaration was signed by Paul Elliot as the President of Soundview (the "Declarant") and recorded in the Suffolk County Clerk's Office. The Declaration indicates that it was recorded in connection with the Town of Riverhead's approval of a site plan for the Property. It provides, in pertinent part, as follows:
"WHEREAS, for and in consideration of the granting of said site plan, the Town Board of the Town of Riverhead has deemed it to be in the best interests of the Town of Riverhead, and the owner and prospective owners of said parcel, that the within covenants and restrictions be imposed on said parcel, and as a condition of granting said site plan and said Town Board has required that the within Declaration be recorded in the Suffolk County Clerk's Office; and
* * *
"That Declarant, for the purpose of carrying out the intentions above expressed, does hereby make known, admit, publish, covenant and agree that the said premises herein described shall hereafter be subject to the following covenants which shall run with the land, and shall be binding upon all purchasers and holders of said premises, their heirs, executors, legal representatives, distributees, successors and assigns; to wit:

 * * *
"12. That the recreational use be limited to the development of a golf club as defined in Section 103-125(A)(i) of the Town of Riverhead Zoning Ordinance, and that the real property be restricted to use as a golf club . . .

 * * *
"14. That in the event that a golf course is developed as approved, the residential development of the property shall be limited to no more than 140 lots or units[.]"
In view of the foregoing, the court finds that the Declaration is not a defect in or lien or encumbrance on title to the Property and that it is a zoning regulation, which falls squarely within Exclusion 1(a) of the Policy. 
Finally, the record reflects that the plaintiffs sold "Great Rock Golf Course" to a third party in 2014. In the agreement of sale, the plaintiffs represented and warranted that they had good and marketable title to all assets of the business, which included the real property, and that those assets were "free and clear of all liens, security interests and encumbrances whatsoever." The attorney who represented the plaintiffs in connection with the sale testified that the purchaser never made any claims against the plaintiffs for violating that representation. Accordingly, the defendant's motion for summary judgment is granted, and the plaintiffs' motion and cross motion for the same relief is denied. The plaintiff Elliot WR Golf LLC's request for sanctions is also denied. 
DATED: November 13, 2018
J. S.C.